[Cite as *Brown v. Brown*, 2019-Ohio-2164.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| LEAH KATE BROWN, | : | |
| Appellee, | : | CASE NO. CA2018-08-064 |
| | : | O P I N I O N |
| - vs - | | 6/3/2019 |
| | : | |
| CLINTON BROWN, | : | |
| Appellant. | : | |

APPEAL FROM CLERMONT COUNTY COMMON PLEAS COURT
DOMESTIC RELATIONS DIVISION
Case No. 2015DRC00545

Alexander, Wagner & Kinman, Christopher M. Alexander, 423 Reading Road, Mason, Ohio 45040 for appellee

Allen Law Firm, LLC, Mitchell W. Allen, 8469 Mason-Montgomery Road, Suite 2, Mason, Ohio 45040 for appellant

**HENDRICKSON, P.J.**

{¶ 1} Clinton Brown ("Father") appeals the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, which terminated the shared parenting agreement between Father and appellee, Leah Kate Brown ("Mother"), and which designated Mother the sole residential parent and legal custodian of their two children. For the reasons

described below, this court reverses and remands for the limited purpose of recalculating child support, but otherwise affirms the domestic relation court's decision.

{¶ 2} Mother and Father married in 2004. In 2009, the marriage produced twin children, a girl ("Daughter"), and a boy ("Son"). In 2015, Mother and Father jointly petitioned the domestic relations court for dissolution and submitted a jointly proposed shared parenting agreement. The domestic relations court subsequently entered a final decree of dissolution and a decree of shared parenting. The shared parenting agreement named both parents residential parents and legal custodians of the children. The agreement provided Father with parenting time on Tuesday and Thursday evenings and every Saturday morning until Sunday afternoon.

{¶ 3} Since the age of four, and before the marriage dissolved, Daughter had participated in cheerleading ("cheer"). Daughter continued this activity after the dissolution. As Daughter advanced in age and experience, cheer became more focused on tumbling routines. Daughter enjoyed cheer and she would "light up" when she talked about tumbling. Both Mother and Father supported Daughter in cheer, which required two weekday practices and eight to ten weekend competitions per year.

{¶ 4} For several years Mother and Father successfully co-parented. However, Father remarried in 2016. This event apparently caused tension in the co-parenting relationship. In April 2017, Father informed Mother via e-mail that he would no longer "support" Daughter's cheer, writing, "I am not going to support [cheer] any longer. I am not going to continue to spend money to lose time with [Daughter]. If you choose for her to continue in [cheer], I will also want to make up any lost parenting time as a result of weekend competitions."

{¶ 5} Meanwhile, other conflicts in shared parenting began to develop. In April 2017, Mother moved the domestic relations court to "enforce" certain aspects of the shared

- 2 -

parenting agreement. Father responded by moving to terminate shared parenting and requested the court name him sole residential parent and legal custodian of the children. The domestic relations court appointed a guardian ad litem ("GAL") to investigate and make a custody recommendation.

{¶ 6} Meanwhile, Mother signed Daughter up for her fourth season of cheer without Father's agreement. Weekend competitions were set to begin in the last two weeks of October 2017. Several weeks prior to the first event, and after the GAL had recommended that Daughter be allowed to participate in cheer, Mother e-mailed Father with the complete list of cheer competitions, beginning October 2017 through March 2018. Mother stated she was "open to any suggestion about how/when to make up time if you do not decide to attend the events, but we can handle each one as they come." Father responded, stating that he and Mother were "still bound by the existing parenting agreement" and he was "not sure how to proceed and will be contacting my attorney."

{¶ 7} Shortly after Mother sent this communication, Father began demanding, through e-mail, that Mother promise to stop approaching him and speaking to him at their children's events. Mother would not agree and stated that she thought it was in their children's best interest that they put aside personal differences while attending their children's events and that they should simply be polite to one another. Mother explained "I have no desire to be around you, but I do believe it's healthy for two parents to share information about their kids at the kids' events. I also believe that this whole situation is easier on the kids if we are just simply polite to one another."

{¶ 8} Father then petitioned for a civil protection order, which he was granted ex parte. This protection order was subsequently dismissed. However, the order of protection was in place for multiple weeks before a hearing was conducted. Mother then moved to terminate shared parenting.

{¶ 9} Mother's counsel wrote to Father's counsel in advance of the first cheer competitions in October to determine how Father wished to proceed given Father's lack of support for cheer. Father failed to provide any substantive response until two days before the first cheer competition. Father's counsel indicated that Father would not bring Daughter to the event and would not agree to alter his parenting time to permit Daughter to participate. Father explained that this decision was premised on Mother's "contempt of the Shared Parenting Plan, her disregard of his requests" and "her continued emotional blackmail of him."

{¶ 10} That Saturday, Mother did not deliver Daughter to Father for Father's parenting time. Instead, Mother kept Daughter and took her to her cheer competition. In the ensuing week, the GAL contacted the parties and attempted to mediate a temporary solution, relaying to Father that the GAL believed that it was in Daughter's best interest to participate in the next cheer competition and that Father should take her to the competition. Father would not agree to do so. As a result, Mother did not deliver Daughter to Father for a second Saturday and instead took the child to her cheer competition. During November and December 2017, Mother withheld Daughter from Father's parenting time on two additional occasions to allow Daughter to attend her cheer competitions.

{¶ 11} Between October and December 2017, Father filed three contempt motions, alleging multiple instances of contempt, including each instance where Mother withheld Daughter from his parenting time for cheer.

{¶ 12} In January 2018, a domestic relations court magistrate held a hearing on the parents' competing motions to terminate shared parenting and Father's contempt motions. At the beginning of the hearing, Father indicated that he was, in addition to moving to terminate shared parenting, alternatively requesting that the court modify the shared parenting agreement to provide him with additional parenting time.

- 4 -

{¶ 13} Mother testified about Daughter's love for cheer, which Mother described as the one consistent part of Daughter's life. Mother took Daughter to her weekday practices, which always occurred during Mother's parenting time. Mother testified that she initially understood Father's position on cheer was that she could enroll Daughter but would have to pay for the activity herself – approximately $3,500 per season – and that she would have to give Father makeup parenting time for any cheer competition that occurred during Father's weekend parenting time.

{¶ 14} Father testified, conceding that he had not attended any of Daughter's cheer competitions since the dispute began but had attended all of Son's football events. He explained that he attended Son's events "because all of those were agreed to [with Mother] prior * * *." Father acknowledged that his children probably would not view the issue the same way he did and that "I know that it hurts [Daughter]." Father said he had talked to Daughter about why he did not support her in cheer, and explained, "I hate that for her and I know how much she likes it but to me as her father my time with her is more important." Father testified that he would be willing to allow Daughter to participate in cheer and would attend her events, but only if Mother or the domestic relations court gave him equal parenting time. Father also softened his earlier refusal to speak with Mother and testified that he would be willing to verbally communicate with Mother so long as they followed up the conversation with a written confirmation of what was said.

{¶ 15} The GAL testified concerning her investigation. Initially, the GAL had recommended that the parents attempt to work through their issues and continue shared parenting, with Mother to be named the residential parent, Father to have alternating weekend parenting time, and that Daughter be permitted to continue cheer. However, the GAL eventually changed her recommendation to terminating the shared parenting agreement because of the high level of conflict between the parents and because Father had indicated

to the GAL that he did not want to speak to Mother under any circumstances. The GAL described Father to the magistrate as "absolutely unreasonable" in terms of his willingness to communicate with Mother.

{¶ 16} After hearing the evidence, the magistrate issued a decision recommending that the court terminate the shared parenting agreement and name Mother sole residential parent and legal custodian. The magistrate further recommended that Mother should have sole decision-making authority with respect to the children's extracurriculars and medical decisions. In so recommending, the magistrate noted Father's refusal to communicate with Mother and found that Father had placed his own interests ahead of his children's best interests.

{¶ 17} The magistrate further recommended that Father have parenting time with the children one day during the week and on alternating weekends. The magistrate also issued a new child support order based on exhibits and testimony regarding the parents' respective incomes.

{¶ 18} With regard to Father's contempt motions, the magistrate recommended the court find Mother guilty of contempt for certain violations of the shared parenting agreement, including each time Mother withheld Daughter from Father during Father's parenting time. The court found that Mother was a first offender of these violations and imposed a $100 fine, ordered Mother to pay Father $500 in attorney fees, to pay Father's court costs, and awarded Father makeup parenting time.

{¶ 19} Father objected to the magistrate's decision. The judge overruled the objections and adopted the magistrate's decision. With respect to extracurriculars, the judge added an order prohibiting Mother from enrolling the children in more than one extracurricular activity per season that interfered with Father's parenting time.

{¶ 20} Father appeals, raising nine assignments of error.

{¶ 21} Assignment of Error No. 1:

{¶ 22} THE TRIAL COURT ABUSED ITS DISCRETION IN TERMINATING THE SHARED PARENTING PLAN AS REQUESTED BY MS. BROWN RATHER THAN MODIFYING THE EXISTING PLAN AS REQUESTED BY MR. BROWN.

{¶ 23} Father argues that the court abused its discretion in terminating the shared parenting agreement and designating Mother sole residential parent and legal custodian. Father contends the court should have modified the existing shared parenting agreement and awarded him equal parenting time with the children.

{¶ 24} A domestic relations court has discretion in custody matters, and its decision in such matters will not be reversed absent an abuse of that discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997), paragraph two of the syllabus. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 25} Pursuant to R.C. 3109.04(E)(2)(c), a court may terminate a shared parenting decree entered pursuant to R.C. 3109.04(D)(1)(a)(i) "upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." A shared parenting decree is entered pursuant to R.C. 3109.04(D)(1)(a)(i) where "both parents jointly make the request [for shared parenting] in their pleadings or jointly file the motion and also jointly file the plan."

{¶ 26} In this case, Mother and Father jointly entered a decree of shared parenting pursuant to R.C. 3109.04(D)(1)(a)(i) and separately moved the court to terminate shared parenting. Accordingly, the court was permitted to terminate the decree pursuant to R.C. 3109.04(E)(2)(c) and Father has not demonstrated an abuse of discretion. Moreover, and as will be discussed in the following assignment of error, the domestic relations court could have terminated the decree based upon its finding that shared parenting was not in the children's

best interest. This court overrules Father's first assignment of error.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING MS. BROWN SOLE CUSTODY OF THE MINOR CHILDREN FOR REASONS THAT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 29} Father argues that the domestic relation court's findings relative to the children's best interest were not supported by the evidence. Specifically, Father argues that the court should have concluded that shared parenting, where Father received equal parenting time, was in the children's best interest.

{¶ 30} This court reviews the domestic relations court's factual findings underpinning its custody determination on a manifest weight of the evidence standard. *In re Lamb*, 12th Dist. Butler No. CA95-01-006, 1996 Ohio App. LEXIS 422, *7 (Feb. 12, 1996). In reviewing the manifest weight of the evidence, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶ 31} Following the termination of a shared parenting agreement pursuant to R.C. 3109.04(E)(2)(c), the domestic relations court is required to issue a decree allocating parental rights and responsibilities "as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(d). In determining how to allocate parental rights, the court must take into consideration the best interest of the children. R.C. 3109.04(B)(1). The factors relevant to determining the best interest of the children are set forth under R.C. 3109.04(F)(1). The factors relevant to whether a shared parenting agreement would be in the children's best interest are set forth

under R.C. 3109.04(F)(2).

{¶ 32} The relevant best interest factors considered by the domestic relations court pursuant to R.C. 3109.04(F)(1) were:

> (a) The wishes of the child's parents regarding the child's care;
>
> * * *
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> * * *
>
> (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; * * *.

{¶ 33} Regarding R.C. 3109.04(F)(1)(a), the court noted that Mother and Father both moved to terminate shared parenting and requested the court name each the children's sole residential parent and legal custodian. The court also noted that Father moved for a modification to the existing shared parenting decree.

{¶ 34} With respect to R.C. 3109.04(F)(1)(c), the court incorporated the findings of the magistrate, which the court found were supported by the evidence. The GAL reported the children as "very bonded" with both parents and the children were also bonded with Father's new wife and her children.

{¶ 35} Concerning R.C. 3109.04(F)(1)(d), the court incorporated the finding of the

magistrate, which the court found was supported by the evidence. The magistrate found that the children were doing well in school.

{¶ 36} In regard to R.C. 3109.04(F)(1)(e), the court incorporated the findings of the magistrate, which the court found were supported by the evidence. The magistrate found that Son had been diagnosed with attention deficit hyperactivity disorder and oppositional defiant disorder and had been prescribed medication. Both parents had been encouraged to either attend an eight-session parent group, conduct research in books and websites, or both, to better understand these conditions. Mother took the class. Father did not. Instead, he chose to do research, which he explained consisted of talking to his wife and his wife's sister, who had a child with attention deficit disorder and oppositional defiant disorder.

{¶ 37} With respect to R.C. 3109.04(F)(1)(f), the court found that Father failed to exercise parenting time with Daughter during her cheer competitions in the 2017-2018 season. The court specifically noted the email communications in evidence that reflected Mother's attempts to discuss and make arrangements concerning Daughter's upcoming weekend cheer competitions. Father delayed responding and then ultimately relayed, through counsel, that he would not allow Daughter to attend the cheer competition and would not alter his parenting time to allow Daughter to participate. The court also noted that there was no evidence that Father missed any parenting time with Son.

{¶ 38} Regarding R.C. 3109.04(F)(1)(i), the court noted that Father did not exercise his scheduled parenting time during Daughter's cheer competitions during the 2017-2018 season.

{¶ 39} With respect to any other relevant factor considered by the court, the court adopted the magistrate's findings. The magistrate found that Daughter was in her fourth season of cheer and that this extracurricular activity had become a major source of conflict between the parents. Cheer was the "most consistent" part of Daughter's life since age four.

The GAL reported that the Daughter "lights up when she talks about her tumbling passes, her friends on the team, and her coaches."

{¶ 40} After Daughter's third season of cheer, Father decided that he would no longer support Daughter in cheer, and because his parenting time coincided with weekend cheer events, Daughter would have to miss those events. The GAL reported that Daughter no longer believed that Father thought she was a good cheerleader.

{¶ 41} Father would agree to take Daughter to cheer, but only if Mother or the domestic relations court granted him equal parenting time. The magistrate found that Father was putting his own interests ahead of Daughter.

{¶ 42} The magistrate also noted that Father had decided that he would not allow Son to participate in basketball after initially agreeing to it at Mother's request a day prior. Father explained he was attempting to be "fair" because he had decided not to allow Daughter to participate in cheer.

{¶ 43} The magistrate further noted that Father did not want to have any interactions with Mother at the children's extracurricular activities and had gone so far as to file a civil protection order against Mother to ensure that she would not approach him at the children's activities, which protection order was ultimately dismissed. Father told the GAL he wanted Mother to "stay away from him." Based on the foregoing, the court determined that it was in the children's best interest to designate Mother as sole residential parent and legal custodian.

{¶ 44} The domestic relations court also considered the following R.C. 3109.04(F)(2) factors relevant to whether a shared parenting agreement would be in the children's best interest:

> (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
>
> (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

* * *

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶ 45} With respect to R.C. 3109.04(F)(2)(a), the court found that the email communications submitted at the hearing demonstrated that Mother and Father were no longer able to cooperate and make decisions jointly. Furthermore, the court noted other instances where both parents failed to act cooperatively in shared parenting. For example, Father failed to inform Mother of Father's decision to punish Son by prohibiting his involvement in a football event. In another instance, Mother rescheduled the children's medical appointment without consulting Father although she told Father about the rescheduled appointment after the fact. When Father learned of an earlier available medical appointment he took the children to the appointment by himself and without informing Mother. The court further noted Father's refusal to communicate with Mother.

{¶ 46} Concerning R.C. 3109.04(F)(2)(b), the court observed that both parents loved their children but only supported the sharing of love between the children and the other parent if they agreed with the other parent's actions. The court also found that both parents had told the children too much about this dispute.

{¶ 47} Regarding R.C. 3109.04(F)(2)(d), the court noted that Mother lived in the children's school district and Father lived 20 minutes away in a different school district.

{¶ 48} With respect to R.C. 3109.04(F)(2)(e), the court noted that the GAL initially recommended shared parenting but had changed her recommendation. The GAL found that Mother and Father were unable to communicate to the level required for shared parenting.

The domestic relations court agreed with the GAL's assessment.

**{¶ 49}** After a thorough review of the record, this court concludes that the domestic relations did not lose its way in allocating parental rights and responsibilities with Mother as sole residential parent and legal custodian of the children. The evidence at the hearing indicated that Father was aware of how important cheer was to Daughter yet took the position that he would no longer support Daughter's participation because it interfered with his parenting time. Moreover, Father was not amenable to working with Mother in any respect to arrive at a solution to allow Daughter to participate. While Mother made attempts to work with Father to allow Daughter to participate in cheer, Father refused and instead used the conflict as a litigation strategy to acquire more parenting time. Most revealing in this regard, Father testified that he would only support Daughter's participation in cheer if Mother or the domestic relations court gave him what he wanted, i.e., additional parenting time.

**{¶ 50}** The evidence also supported the domestic relations court's decision that shared parenting was not in the children's best interest. In written email correspondence introduced at trial and Father's own statements to the GAL, Father was adamant he did not want Mother to speak with him in person, even if it was just a simple matter concerning the children. Although Father moderated his position on this issue at the hearing, the domestic relations court could have found him less than credible on this subject due to his inconsistent statements. Finally, Father's unwillingness to communicate with Mother culminated in his filing a meritless petition for a civil protection order.

**{¶ 51}** Father argues that the court erred by not taking into consideration Mother's violations of the shared parenting agreement. There is no dispute that Mother intentionally withheld Daughter during Father's parenting time and this action was improper, However, Mother's motivations in doing so were for purposes of ensuring that Daughter was able to participate in an activity she enjoyed and for which Father withheld his permission for

purposes that appear to be focused on generating conflict and promoting a litigation strategy. Moreover, with respect to the contempt finding, the magistrate noted that this was a "close" issue as Father's initial response to Mother on Daughter's participation in cheer could have reasonably been interpreted as Father's acquiescence so long as he received makeup parenting time.

{¶ 52} Father also argues that the court ignored that the GAL had at one time recommended shared parenting. However, by the time of the hearing, the GAL had changed her viewpoint on that subject because of Father's untenable position on communicating with Mother. Consequently, this court concludes that the domestic relations court's decision to terminate shared parenting and name Mother sole residential parent and legal custodian is supported by the weight of the evidence. This court overrules Father's second assignment of error.

{¶ 53} Assignment of Error No. 3:

{¶ 54} THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING MS. BROWN SOLE DECISION-MAKING AUTHORITY FOR ALL EXTRACURRICULAR ACTIVITES AND MEDICAL DECISIONS.

{¶ 55} In his third assignment of error, Father argues that the domestic relations court erred in granting Mother sole decision-making authority for extracurricular activities and medical issues. Father argues that Mother should not be so empowered because she "deliberately and consistently violated the [domestic relations court's] orders."

{¶ 56} Father's argument lacks merit. As discussed in the previous assignment of error, Father's actions demonstrated he was not amenable to co-parenting. Under the circumstances of this case, it was not an abuse of discretion to give decision-making authority over extracurricular activities and medical decisions to Mother, the residential parent.

{¶ 57} Father also argues that he is now "at the mercy" of Mother who can schedule the children's activities during his parenting time "with impunity." However, the court order specifies that Mother can only sign the children up for one activity per season that interferes with Father's parenting time. This court overrules Father's third assignment of error.

{¶ 58} Assignment of Error No. 4:

{¶ 59} THE TRIAL COURT ERRED BY NAMING MOTHER AS THE RESIDENTIAL PARENT AND SOLE CUSTODIAN OF THE PARTIES' MINOR CHILDREN IN VIOLATION OF O.R.C. §3109.04(E)(1)(A).

{¶ 60} Father argues that the court failed to make certain required "change of circumstances" findings before terminating shared parenting. Father cites R.C. 3109.04(E)(1)(a), which provides in relevant part:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds * * * that a change has occurred in the circumstances of the child * * * and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
>
> (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
>
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 61} At the hearing, the parties stipulated to a change of circumstances. However, Father now argues that the domestic relations court failed to make one of the specific findings set forth in R.C. 3109.04(E)(1)(a)(i)-(iii) and therefore could not terminate the shared parenting decree.

- 15 -

{¶ 62} The domestic relations court did not "modify" Mother and Father's prior decree on parental rights and responsibilities. Pursuant to Mother's request, the domestic relations court terminated the shared parenting decree. This court has consistently held that a motion to terminate shared parenting is governed by R.C. 3109.04(E)(2)(c) and does not require a showing of a change of circumstances under R.C. 3109.04(E)(1)(a). *Manis v. Manis*, 12th Dist. Warren No. CA2014-05-070, 2014-Ohio-5086, ¶ 13; *C.D. v. D.L.*, 12th Dist. Fayette No. CA2006-09-037, 2007-Ohio-2559, ¶ 15-19; *A.S. v. D.G.*, 12th Dist. Clinton No. CA2006-05-017, 2007-Ohio-1556, ¶ 31; *In re Wright,* 12th Dist. Brown No. CA96-10-019, 1997 Ohio App. LEXIS 2229, *7 (May 27, 1997); *Zmyslo v. Zmyslo*, 12th Dist. Warren No. CA96-02-016*, 1996 Ohio App. LEXIS 5353, *8-9 (Dec. 2, 1996); *Patton v. Patton*, 12th Dist. Clinton No. CA94-04-011, 1995 Ohio App. LEXIS 161, *7-8 (Jan. 23, 1995). Although the parties stipulated to a change of circumstances, it was unnecessary to permit the court to terminate the shared parenting agreement. Therefore, this court overrules Father's fourth assignment of error.

{¶ 63} Assignment of Error No. 5:

{¶ 64} THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING MS. BROWN TO BE ONLY A FIRST OFFENDER OF CONTEMPT, AND SANCTIONING HER PROPORTIONATELY, WHERE THE TRIAL COURT FOUND THAT SHE HAD VIOLATED COURT ORDERS ON SEVEN SEPARATE OCCASIONS.

{¶ 65} Father argues that the court erred in finding Mother a "first offender" despite multiple findings of contempt and that he should have been awarded $1500 in attorney fees, i.e., $500 for each of the three contempt motions he filed. An appellate court reviews a lower court's contempt findings, including the imposition of penalties, under the abuse of discretion standard. *Mackowiak v. Mackowiak*, 12th Dist. Fayette No. CA2010-04-009, 2011-Ohio-3013, ¶ 45. Contempt of court is governed by R.C. 2705.05, which provides:

(A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:

(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;

(2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;

(3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both.

{¶ 66} Father filed three contempt motions, alleging nine violations of the shared parenting agreement. After hearing the evidence, the court found Mother guilty of contempt as a first offender for: (1) failing to resolve any parental dispute outside the children's presence (Mother talked with Daughter about the GAL's custody recommendation), (2) failing to provide Father with his right of first refusal to parenting time on one occasion, (3) for enrolling Daughter in an activity (cheer) that would impact Father's parenting time without an agreement to do so, and (4) withholding Daughter from Father's parenting on the four weekend days for cheer.

{¶ 67} For these violations, the court imposed a $100 fine, ordered that Father receive makeup parenting time, and ordered that Mother pay Father's court costs in the amount of $495 (there was a $165 filing fee for each of the three contempt motions). With respect to attorney fees, the court noted that Father failed to put on any evidence concerning his attorney fees but still awarded him $500, the presumptive "reasonable" attorney fee pursuant to the local rules of the court.

{¶ 68} Father argues that because Mother was found guilty of over three violations of

the shared parenting agreement she should have been found to be a third-time offender. This court does not find that the domestic relations court abused its discretion in finding Mother to be a first-time offender because there was no evidence presented indicating that Mother had been found guilty of any contempt offenses prior to the hearing. *See State ex rel. Clermont County Dept. of Human Servs. v. Walsson*, 108 Ohio App.3d 125 (12th Dist.1995). *See also Tippie v. Patnik*, 11th Dist. Geauga No. 2005-G-2665, 2006-Ohio-6532, ¶ 9, fn.1.

{¶ 69} Father further argues that the court should have awarded him $500 in attorney fees for each contempt motion filed. However, Father failed to present any evidence concerning his attorney fees and thus cannot demonstrate that the domestic relations court abused its discretion in awarding him the presumptive "reasonable" attorney fee. This court overrules Father's fifth assignment of error.

{¶ 70} Assignment of Error No. 6:

{¶ 71} THE TRIAL COURT ERRED IN FAILING TO CONSIDER ALL MS. BROWN'S INCOME FROM ALL SOURCES WHEN CALCULATING CHILD SUPPORT.

{¶ 72} Father argues that the court failed to consider income earned by Mother in calculating the child support obligation of each party. A trial court has wide discretion regarding domestic relations child support obligations, and the decision of the trial court will not be disturbed unless an abuse of discretion has ocurred. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989).

{¶ 73} Initially, Mother argues that Father failed to raise this issue and has waived all but civil plain error. However, the record indicates that Father did raise the issue in his objections to the magistrate's decision. The juvenile court did not address this specific objection in its order.

{¶ 74} An exhibit introduced by Mother indicates that she earned $3,517 from teaching

aerobic classes in 2017. Mother testified that this amount did not reflect her expenses in teaching the classes but did not testify concerning these expenses. The child support worksheet does not appear to reflect this income.

{¶ 75} This court concludes that it must reverse and remand on this limited issue because the domestic relations court did not rule on the objection and it otherwise does not appear that the court accounted for this income in the child support worksheet. Failure to rule on an objection is error. This court sustains Father's sixth assignment of error.

{¶ 76} Assignment of Error No. 7:

{¶ 77} THE TRIAL COURT ERRED IN AVERAGING MS. BROWN'S ONE BONUS OVER THREE YEARS WHEN CALCULATING CHILD SUPPORT.

{¶ 78} Father argues that the court erred in computing Mother's annual income where it failed to properly account for a work bonus she received in 2017.

{¶ 79} R.C. 3119.05(D) provides:

> When the court or agency calculates the annual income of a parent, it shall include the lesser of the following as income from overtime and bonuses:
>
> (1) The yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;
>
> (2) The total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed.

{¶ 80} The evidence was that Mother's employer paid her a bonus of $17,500 in 2017. However, Mother did not receive any bonuses in the two preceding years, i.e., 2015 and 2016. The court averaged the preceding two years receipt of no bonuses with the 2017 bonus and arrived at the figure of $5,833 as the lesser of the two statutory options available under R.C. 3119.05(D).

{¶ 81} Father argues that because Mother did not receive any bonuses in 2015 and 2016 and subsection one refers to "bonuses *received* during the three years" then the court should not have included her non-receipt of bonuses in arriving at a three-year average. In other words, Father believes that the average of bonuses received should have been $17,500, the only bonus "received" during the prior three years.

{¶ 82} This court disagrees with Father's interpretation of the statue. The statute operates to allow the obligor the *lesser* of either the average bonus received by the obligor over three years or the preceding year's bonus. Therefore, if the object of the statue is to provide a realistic yet conservative approximation of bonuses received over time, then it would be logical to include in the average those years during which no bonuses were awarded. Father's interpretation of the statute would lead to an absurd result in a case such as this one where an obligor received no bonuses in years one and two but a bonus in year three. Father's interpretation also arbitrarily requires that an obligor must have received some bonus each year – even if it was only a nominal amount – to be counted toward the average. This court overrules Father's seventh assignment of error.

{¶ 83} Assignment of Error No. 8:

{¶ 84} THE TRIAL COURT COMMITTED PLAIN ERROR IN ADMITTING AND CONSIDERING A GAL REPORT THAT WAS INADMISSIBLE UNDER THE RULES OF EVIDENCE.

{¶ 85} Father argues that the court erred in admitting the GAL's written report.[1] Father contends that the report should not have been admitted because it contains summaries of interviews and correspondence with various individuals, including the minor children, and that these summaries and communications constitute inadmissible hearsay. "Decisions regarding

---

1. Father refers to "plain error" in his assignment of error. However, the record reflects that he did raise this issue with the domestic relations court.

the admission of evidence are within the sound discretion of the domestic relations court and may not be reversed absent an abuse of discretion." *Koehler v. Koehler*, 12th Dist. Brown Nos. CA2017-12-016 and CA2017-12-017, 2018-Ohio-4933, ¶ 45.

{¶ 86} This court does not find that the domestic relations court abused its discretion in admitting the GAL's report. At the outset, Father fails to specifically address which statements in the report constitute alleged inadmissible hearsay. In overruling Father's objections, the domestic relations court noted that the out-of-court statements in the report had not been considered for the truth of the matter asserted. This would suggest that the statements were not hearsay. Regardless, even if the GAL's report contained hearsay, this court cannot find prejudice when Father has failed to identify specific objectionable statements. Additionally, the GAL testified concerning her investigation and was subject to full cross-examination by Father. This court overrules Father's eighth assignment of error.

{¶ 87} Assignment of Error No. 9:

{¶ 88} THE TRIAL COURT ERRED IN ALLOWING THE GAL TO PARTICIPATE AS AN ATTORNEY IN A CASE IN WHICH SHE WAS NOT APPOINTED AS AN ATTORNEY.

{¶ 89} Finally, Father contends that the domestic relations court erred in allowing the GAL to participate in the hearing by examining witnesses. Father concedes that a local rule of the domestic relations court specifically permitted the GAL to examine witnesses but argues that the rule conflicts with various other procedural and substantive rules of law. Specifically, Local Rule 29 of the Clermont County Common Pleas Court, Domestic Relations Division, provides that "[i]n representing the best interest of the child/ren and providing the Court with relevant information, the GAL may review all confidential records involving the child/ren by request, subpoena, and deposition, subpoena and examine independent witnesses, and cross examine all witnesses called by the parties to the case." Loc.R. DR 29(B)(4). Father argues that Loc.R. 29(B)(4) violates the Rules of Civil Procedure, the Rules

of Evidence, the Rules of Superintendence, the Rules of Professional Conduct, and the common law by permitting an individual functioning as a non-attorney to act as an attorney in court.[2]

**{¶ 90}** Sup.R. 48(D) addresses the responsibilities of GALs and provides that "[a] guardian ad litem shall appear and participate in any hearing for which the duties of a guardian ad litem or any issues substantially within a guardian ad litem's duties and scope of appointment are to be addressed." Loc.R. 29(B)(4) appears consistent with the objective of Sup.R. 48, which is that a GAL participate "in assisting the court in its determination of a child's best interest." Sup.R. 48(A).

**{¶ 91}** Father argues that Loc.R. 29(B)(4) violates Rule 3.7 of the Ohio Rules of Professional Conduct, which addresses whether a lawyer may act as an advocate at a trial where the lawyer may be a witness. However, a court of appeals is not the proper forum for raising alleged professional conduct rule violations. *In re Estate of Dye*, 12th Dist. Fayette Nos. CA2011-04-004, CA2011-04-005, and CA2011-04-006, 2012-Ohio-2570, ¶ 85. Father's ninth assignment of error is meritless and is overruled.

**{¶ 92}** Judgment reversed as to the child support calculation as addressed in the discussion of Father's sixth assignment of error, and remanded for further proceedings on that issue, but otherwise affirmed in all respects.

S. POWELL and PIPER, JJ., concur.

---

2. In his assignment of error, Father only articulates how the local rule allegedly violates the Rules of Superintendence and the Rules of Professional Conduct.