[Cite as *Brown v. Brown*, 2019-Ohio-3619.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| LEAH KATE BROWN, | : | |
| Appellee, | : | CASE NO. CA2019-01-007 |
| | : | O P I N I O N |
| - vs - | | 9/9/2019 |
| | : | |
| CLINTON BROWN, | : | |
| Appellant. | : | |


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2015DRC00545


Alexander, Wagner & Kinman, Christopher M. Alexander, 423 Reading Road, Mason, Ohio 45040, for appellee

Allen Law Firm, LLC, Mitchell W. Allen, 8469 Mason-Montgomery Road, Suite 2, Mason, Ohio 45040, for appellant


**S. POWELL, P.J.**

{¶ 1} Appellant, Clinton Brown ("Father"), appeals the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, finding appellee, Leah Kate Brown ("Mother"), "in contempt as a second offender" after she was found in civil contempt

for violating the parties' shared parenting agreement. Father also appeals the domestic relations court's decision ordering Mother to pay him $500 in attorney fees stemming from that civil contempt finding. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} Mother and Father were divorced in the summer of 2015. Following their divorce, Mother and Father were parties to a shared parenting agreement regarding their two children, twins born on September 23, 2009. Approximately two years after their divorce, on November 6, 2017, December 11, 2017, and December 21, 2017, Father filed three separate motions for contempt against Mother. The three motions alleged that Mother had committed nine violations of the parties' shared parenting agreement; the November 6, 2017 motion alleging five violations, the December 11, 2017 motion alleging one violation, and the December 21, 2017 motion alleging three violations. Although brought in three separate motions, Father numbered the alleged violations consecutively one through nine. The nine violations alleged by Father in those three motions were as follows.

<u>November 6, 2017 Motion for Contempt</u>

(1) Violation of Article I, Section K, due to Mother discussing the case with the children;

(2) Violation of Article I, Section I, due to Mother's failure to give Father his right of first refusal for parenting time on July 24, 2017;

(3) Violation of Article V, Section B, for Mother enrolling their daughter in an activity that impacted Father's parenting time;

(4) Violation of Article I, Section C, for Mother taking their daughter to a cheerleading event on October 21, 2017 rather than allowing Father to exercise his parenting time; and

(5) Violation of Article I, Section C, for Mother taking their daughter to a cheerleading event on October 28, 2017 rather than allowing Father to exercise his parenting time.

<u>December 11, 2017 Motion for Contempt</u>

(6) Violation of Article 1, Section C, for Mother taking their daughter to a cheerleading event on November 18, 2017 rather than allowing Father to exercise his parenting time.

<u>December 21, 2017 Motion for Contempt</u>

(7) Violation of Article I, Section I, due to Mother's failure to give Father his right of first refusal for parenting time on December 8, 2017;

(8) Violation of Article I, Section K, due to Mother again discussing the case with the children; and

(9) Violation of Article I, Section C, for Mother taking their daughter to a cheerleading event on December 16, 2017 rather than allowing Father to exercise his parenting time.

{¶ 3} On January 23, 2018, a single hearing on Father's three motions for contempt was held before a domestic relations court magistrate. Shortly thereafter, on March 8, 2018, the magistrate issued a decision finding Mother in contempt for committing seven of the nine violations Father alleged in his three motions; violations (1) thru (5) set forth in Father's November 6, 2017 motion, violation (6) set forth in Father's December 11, 2017 motion, and violation (9) set forth in Father's December 21, 2017 motion. Due to these seven violations, the magistrate issued a purge order that required Mother, as a "first offender," to pay a $100 fine and provide Father with makeup parenting time. The magistrate also ordered Mother to reimburse Father $495 in court costs ($165 for each of the three motions for contempt he filed) and to pay Father $500 in attorney fees. The magistrate reached this decision by rejecting Father's claim that he was actually entitled to $1,500 in attorney fees, i.e., $500 for each of the three motions for contempt he filed and from which Mother was sanctioned.

{¶ 4} In so holding, the magistrate noted that Father's attorney "did not testify with respect to his attorney fees." This, as the magistrate found, was a necessary prerequisite

for a party seeking attorney fees in excess of the presumptively "reasonable" $500 fee set forth in the domestic relations court's local rules; specifically, Loc.R. DR 45(B).  Pursuant to that rule, "[u]nless otherwise determined by the Court and absent formal evidence, $500 is a reasonable attorney fee."  What constitutes "formal evidence" is set forth in the domestic relations court's Loc.R. DR 45(C), which provides that "[i]f a party is seeking an award for attorney fees in excess of $500," the attorney must present the following evidence:

> (1) An itemized statement describing the services rendered, the time for such services, the requested hourly rate, and necessary expenses and cost for litigation;
>
> (2) Testimony as to whether the case was complicated by any factor which necessitated extra time being spent on the case;
>
> (3) Testimony regarding the attorney's years in practice and experience in domestic relations cases; and
>
> (4) Evidence of the defending party's ability to pay, and of the moving party's need for an award of attorney fees.

{¶ 5}  On March 8, 2018, Father filed objections to the magistrate's decision.  As part of his objections, Father argued the magistrate erred by finding Mother was just a "first offender" despite the magistrate determining Mother had committed seven violations of the parties' shared parenting agreement.  Father also argued the magistrate erred by ordering Mother to pay him only $500 in attorney fees.

{¶ 6}  On August 21, 2018, the domestic relations court issued a decision overruling Father's objections.  In so holding, the domestic relations court found an award of $500 in attorney fees was a "reasonable fee in this case."  This was because, according to the domestic relations court, "[i]t is for one proceeding not for each individual motion or violation addressed in that proceeding."  The domestic relations court also found that an award of $500 in attorney fees was proper since Father had "failed to present any formal evidence that he incurred reasonable attorney fees in excess of $500."

{¶ 7} On August 31, 2018, Father appealed the domestic relations court's decision. Similar to the two objections outlined above, Father challenged the domestic relations court's decision finding Mother was just a "first offender" despite the magistrate determining Mother had committed seven violations of the parties' shared parenting agreement. Father also challenged the domestic relations court's decision ordering Mother to pay him only $500 in attorney fees. Finding no merit to any of his arguments raised therein, this court affirmed the domestic relations court's decision in *Brown v. Brown*, 12th Dist. Clermont No. CA2018-08-064, 2019-Ohio-2164 ("*Brown I*").

{¶ 8} Specifically, as this court stated when overruling Father's argument challenging the domestic relations court's "first offender" finding:

> Father argues that because Mother was found guilty of over three violations of the shared parenting agreement she should have been found to be a third-time offender. This court does not find that the domestic relations court abused its discretion in finding Mother to be a first-time offender because there was no evidence presented indicating that Mother had been found guilty of any contempt offenses prior to the hearing.

*Id.* at ¶ 68.

{¶ 9} Thereafter, when overruling Father's argument challenging the domestic relations court's award of attorney fees, this court stated:

> Father further argues that the court should have awarded him $500 in attorney fees for each contempt motion filed. However, Father failed to present any evidence concerning his attorney fees and thus cannot demonstrate that the domestic relations court abused its discretion in awarding him the presumptive "reasonable" attorney fee.

*Id.* at ¶ 69.

{¶ 10} While Father's appeal in *Brown I* was pending, Father filed an additional nine motions for contempt against Mother; three on April 4, 2018, one on May 1, 2018, four on May 23, 2018, and one additional motion on June 8, 2018. Each of Father's nine motions

alleged a single violation of the parties' shared parenting agreement.  The nine violations alleged by Father in those nine motions were as follows.

### April 4, 2018 Motions for Contempt

(1) Violation of Article I, Section C, for Mother taking their daughter to a cheerleading event on February 3 and 4, 2018 rather than allowing Father to exercise his parenting time;

(2) Violation of Article I, Section C, for Mother taking their daughter to a cheerleading event on February 24 and 25, 2018 rather than allowing Father to exercise his parenting time; and

(3) Violation of Article 1, Section C, for Mother taking their daughter to a cheerleading event on March 17 and 18, 2018 rather than allowing Father to exercise his parenting time.

### May 1, 2018 Motion for Contempt

(1) Violation of Article I, Section C, for Mother taking their daughter to a cheerleading event on April 7 and 8, 2018 rather than allowing Father to exercise his parenting time.

### May 23, 2018 Motions for Contempt

(1) Violation of Article I, Section C, for Mother taking their daughter to a cheerleading event on May 3, 2018 rather than allowing Father to exercise his parenting time;

(2) Violation of Article I, Section C, for Mother taking their daughter to a cheerleading event on May 5 and 6, 2018 rather than allowing Father to exercise his parenting time;

(3) Violation of Article V, Section B, for Mother enrolling their son in an activity that impacted Father's parenting time; and

(4) Violation of Article V, Section B, for Mother enrolling their son in another activity that impacted Father's parenting time.

### June 8, 2018 Motion for Contempt

(1) Violation of Article I, Section A, and Article X, for Mother interfering with Father's access to their children's school, and thus Father's parenting time, as well as Mother interfering with Father's access to their children's records.

{¶ 11} On August 24, 2018, the magistrate held a single hearing on Father's motions.

- 6 -

Father did not object to the magistrate holding a single hearing to address each of his nine motions. Rather, as part of the magistrate's scheduling order, the magistrate specifically stated that "[c]ounsel further agreed that it would be easier to try all the Motions at one time." Both Mother and Father appeared at this hearing represented by counsel. Although a transcript of this hearing was not made a part of the record, the record nevertheless reveals that both Mother and Father also testified at this hearing.

{¶ 12} On October 16, 2018, the magistrate issued a decision sanctioning Mother on four of the nine alleged violations set forth in Father's nine motions for contempt; violations (2) and (3) alleged in Father's four motions filed on April 4, 2018, as well as the single violations alleged in Father's motions filed on May 1, 2018 and June 8, 2018. Due to these four violations, the magistrate found Mother "in contempt as a second offender" and sentenced Mother to a 60-day jail term. Mother, however, was notified that she could purge the contempt by providing Father with makeup parenting time and by writing an apology letter to their daughter's soccer facility. The magistrate also ordered Mother to reimburse Father $660 in court costs "representing court costs for the four Motions for which the Court is making a finding of contempt ($165 each)," as well as pay Father $500 in attorney fees. The magistrate reached this decision by again rejecting Father's claim that he was actually entitled to $2,000 in attorney fees, i.e., $500 for each of the four motions for contempt he filed and from which Mother was sanctioned.

{¶ 13} On October 29, 2018, Father filed objections to the magistrate's decision. Father's objections contained the same basic arguments Father advanced in *Brown I*. Specifically, Father argued that the magistrate erred by (1) finding Mother was just a "second offender" despite the magistrate sanctioning Mother on four violations of the parties' shared parenting agreement and by (2) ordering Mother to pay him only $500 in attorney fees.

{¶ 14} On December 12, 2018, the domestic relations court issued a decision overruling Father's objections. In so holding, the domestic relations court determined the magistrate did not err by finding Mother was just a "second offender." This was because, according to the domestic relations court, "[b]y combining the findings of contempt in one finding of contempt as a second offender serves both the purpose of the proceedings and the purpose of sanctions." The domestic relations court also determined the magistrate did not err by ordering Mother to pay Father only $500 in attorney fees. In reaching this decision, the domestic relations court stated:

> [Father's] attorney failed to present any formal evidence as to this motion for attorney fees. This court determined that $500 is a reasonable attorney fee in this case. The award of attorney fees is not a sanction but a reimbursement for actual time expended as determined reasonable by the court absent formal evidence.

**Appeal**

{¶ 15} Father now appeals the domestic relations court's decision, raising a single assignment of error for review. In his assignment of error, Father argues the domestic relations court erred by finding Mother was just a "second offender" despite the domestic relations court sanctioning Mother for committing four violations of the parties' shared parenting agreement. Father also argues the domestic relations court erred by ordering Mother to pay him only $500 in attorney fees. We find no merit to either of Father's claims.

Domestic Relations Court's "Second Offender" Finding

{¶ 16} Just as it had done in *Brown I*, the domestic relations court found Mother in civil contempt for her failure to comply with the parties' shared parenting agreement. A finding of civil contempt is proper where the sanctions imposed by the domestic relations court are primarily for reasons benefiting the complainant and are remedial and coercive in nature. *Ganaway v. Ganaway*, 12th Dist. Warren No. CA2016-05-039, 2017-Ohio-1009, ¶

- 8 -

24. A domestic relations court's finding of civil contempt will not be disturbed on appeal absent an abuse of discretion. *Dimitriou v. Dimitriou*, 12th Dist. Warren No. CA2011-11-119, 2012-Ohio-4773, ¶ 13. This includes the imposition of penalties. *Mackowiak v. Mackowiak*, 12th Dist. Fayette No. CA2010-04-009, 2011-Ohio-3013, ¶ 45, discretionary appeal not allowed, 130 Ohio St.3d 1437, 2011-Ohio-5883, citing *Fidler v. Fidler*, 10th Dist. Franklin No. 08AP-284, 2008-Ohio-4688, ¶ 12.

{¶ 17} R.C. 2705.03 "governs contempt hearings and provides that the accused must be given the opportunity to be heard." *Pulled From The Pits Rescue & Sanctuary v. Dabernig*, 9th Dist. Wayne No. 15AP0061, 2016-Ohio-7255, ¶ 9. To that end, pursuant to R.C. 2705.05(A), in all contempt proceedings, "the court shall conduct a hearing." At that contempt hearing, R.C. 2705.05(A) mandates the court to "investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge." Thereafter, if the accused is found in contempt, "the court may impose" any of the penalties set forth in R.C. 2705.05(A)(1) thru (3). Those penalties are:

> (1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both;
>
> (2) For a second offense, a fine of not more than five hundred dollars, a definite term of imprisonment of not more than sixty days in jail, or both;
>
> (3) For a third or subsequent offense, a fine of not more than one thousand dollars, a definite term of imprisonment of not more than ninety days in jail, or both.

{¶ 18} Although there can be no dispute that Mother had been found in contempt previously, *see Brown I*, the domestic relations court did not abuse its discretion by finding Mother was just a "second offender" rather than a third offender, fourth offender, and fifth offender as Father suggests. This is true despite the fact that the domestic relations court

- 9 -

sanctioned Mother for committing four separate violations of the parties' shared parenting agreement.

{¶ 19} By arguing Mother should have been considered a higher tiered offender for each violation, Father is misapplying the Ohio Supreme Court's holding in *Pugh v. Pugh*, 15 Ohio St.3d 136 (1984), the Tenth District Court of Appeals' holding in *Bowers v. Bowers*, 10th Dist. Franklin No. 90AP-130, 1990 Ohio App. LEXIS 5223 (Nov. 29, 1990), and this court's holding in *Mackowiak*, 2011-Ohio-3013. Specifically, as this court held in *Mackowiak* when discussing *Pugh*, "when two or more violations are brought in a single contempt action and during one hearing, the person found guilty of contempt cannot be punished for each violation." *Mackowiak* at ¶ 57, citing *Pugh* at 142-143; and *Bowers*.

{¶ 20} Father argues that because he filed nine separate motions for contempt each alleging a single violation of the parties' shared parenting agreement that his nine motions were not "brought in a single contempt action during one hearing." This, according to Father, required the domestic relations court to designate Mother a higher tiered offender for each of Mother's four violations. However, contrary to Father's claim, incentivizing a complainant to file separate motions for contempt for each alleged violation of the parties' shared parenting agreement was not the Ohio Supreme Court's intent behind its holding in *Pugh*, the Tenth District's holding in *Bowers*, or this court's holding in *Mackowiak*. This court should not, and will not, permit Father to misapply the principles outlined in *Pugh*, *Bowers*, and *Mackowiak* in order to reach his desired result; namely, punishing Mother to the harshest extent possible.

{¶ 21} This is the same basic holding advanced by this court in *Brown I*. Again, as part of Father's prior appeal, Father argued that "because Mother was found guilty of over three violations of the shared parenting agreement she should have been found to be a third-time offender." *Id.*, 2019-Ohio-2164 at ¶ 68. This court disagreed and found the

domestic relations court did not err "in finding Mother to be a first-time offender because there was no evidence presented indicating that Mother had been found guilty of any contempt offenses prior to the hearing." *Id.* But, had this court held the opposite, that holding would have required this court to find Mother was, at the very least, a "third offender." This is because, as noted above, the domestic relations court found Mother had violated a portion of each of Father's three motions for contempt.

{¶ 22} Because Mother was found to have violated a portion of each of Father's three motions, our holding in *Brown I* would not have been dependent on the fact Mother had not been found in contempt previously. Mother would have instead been found to be a "first offender" for violating at least one of the alleged violations set forth in Father's November 6, 2017 motion, a "second offender" for committing the alleged violation set forth in Father's December 11, 2017 motion, and a "third offender" for committing one of the alleged violations set forth in Father's December 21, 2017 motion. This court rejected that argument in *Brown I* and similarly rejects that argument here.

{¶ 23} In reaching this decision, we find it necessary to discuss the underlying facts set forth by the Ohio Supreme Court in *Pugh* and the Tenth District in *Bowers*, the two decisions this court relied on in *Mackowiak* to hold that "when two or more violations are brought in a single contempt action and during one hearing, the person found guilty of contempt cannot be punished for each violation." *Mackowiak*, 2011-Ohio-3013 at ¶ 57, citing *Pugh*, 15 Ohio St.3d at 142-143; and *Bowers*, 1990 Ohio App. LEXIS 5223.

{¶ 24} In *Pugh,* appellee filed two motions for contempt against the appellant; one on March 15, 1983 and the other on April 15, 1983. In her first motion, appellee alleged that appellant had violated the terms of their separation agreement by failing to timely pay a lump sum property settlement. *Id.* at 137. Similarly, in her second motion, appellee alleged that appellant had violated the terms of their separation agreement since "the title

to the Jaguar had not been transferred, that the snowmobile had not been transferred, and that the appellant was behind in his periodic payments and child support." *Id.*

{¶ 25} On May 5, 1983, the domestic relations court held a single hearing on appellee's two motions for contempt. During this hearing, evidence was presented indicating appellant had committed both violations alleged in each of appellee's two motions. Upon finding appellant in contempt on each of the two violations set forth in appellee's two motions for contempt, the domestic relations court ordered appellant to serve two consecutive ten-day jail terms; one ten-day jail term for failing to timely pay the lump sum property settlement and another ten-day jail term for "for not transferring the title to the Jaguar, for willfully failing to pay his child support obligation, and for willfully failing to make his periodic payments." *Id.* at 138.

{¶ 26} Appellant appealed the domestic relations court's decision. As part of his appeal, appellant argued that it was improper for the domestic relations court to order him to serve two consecutive ten-day jail terms "for violating two different terms of the separation agreement" when "both violations were *brought out in one action for contempt.*" (Emphasis added.) *Id.* at 142. Relying on R.C. 2705.05, the Ohio Supreme Court agreed and found that even though appellee had filed two motions for contempt, "appellant may only be imprisoned for a maximum of ten days if he is found guilty of contempt. He cannot be imprisoned for each violation which composes the contempt charge." *Id.* at 143.[1]

{¶ 27} Similar to the facts in *Pugh*, in *Bowers*, appellee also filed two motions for contempt against the appellant; one on October 10, 1989 and one on November 2, 1989. *Bowers*, 1990 Ohio App. LEXIS 5223 at *2. The first motion alleged that appellant had

---

1. We note that although appellant could not be imprisoned for each violation in *Pugh*, the Ohio Supreme Court nevertheless found its holding "[did] not limit the number of contempt actions which may be brought." *Id.*, 15 Ohio St.3d at 143. That is to say "[i]f appellant refuses to obey the orders of the court after serving his sentence, additional contempt proceedings can be initiated which list the appellant's violations." *Id.*

- 12 -

violated the parties' divorce decree by "refusing to comply with the visitation order and for refusing to allow telephone contact with his daughter." *Id.* On the other hand, the second motion alleged that appellant had violated the parties' divorce decree by failing "to divide the funds on deposit at BancOhio National Bank pursuant to the terms of the decree of divorce." *Id.*

{¶ 28} On December 18, 1989, the domestic relations court held a single hearing on appellee's two motions for contempt. *Id.* Following this hearing, the domestic relations court found appellant in contempt for denying appellee visitation time with their daughter. *Id.* The domestic relations court also found appellant in contempt for "her willful failure and refusal to divide the proceeds of the BancOhio account[.]" *Id.* Upon finding appellant in contempt on each of the two violations set forth in appellee's two motions for contempt, the domestic relations court ordered appellant to pay a $1,000 fine; one $500 fine for denying appellee visitation time with their daughter and another $500 fine for failing to divide the proceeds of the BancOhio account. *Id.*

{¶ 29} Appellant appealed the domestic relations court's decision. As part of her appeal, appellant argued the domestic relations court "erred in imposing more than one fine on her, and in imposing an excessive fine on her." *Id.* at *8. Just like in *Pugh*, the Tenth District agreed and held that even though appellee had filed two separate motions for contempt that "the two violations were brought *in a single action and during one hearing.*" (Emphasis added.) *Id.* Therefore, because the two motions for contempt were brought in a "single action and during one hearing," the Tenth District found that once the appellant was found in contempt that she could not be fined for "each violation which composes the contempt charges." *Id.* Accordingly, citing to the Ohio Supreme Court's decision in *Pugh*, the Tenth District held "the trial court erred in imposing a fine on appellant on each of the contempt charges and in fining appellant more than the maximum amount permitted by

statute." *Id.*, 1990 Ohio App. LEXIS 5223 at *8.

**{¶ 30}** As noted above, Father argues that because he filed nine separate motions for contempt each alleging a single violation of the parties' shared parenting agreement that the nine motions were not "brought in a single contempt action and during one hearing." However, based on the Ohio Supreme Court's decision in *Pugh* and the Tenth District's holding in *Bowers*, Father's understanding of what it means be "brought in a single contempt action" is misplaced. Rather, in accordance with *Pugh* and *Bowers*, an action in contempt may be classified as a single contempt action even when the alleged violations are brought in two or more motions for contempt. This is true so long as each of those motions are addressed during one contempt hearing.[2] Therefore, contrary to Father's claim, the holdings set forth in *Pugh*, *Bowers*, and *Mackowiak* applies only when allegations of contempt are brought in a *single contempt action* and during one hearing not when the allegations of contempt are brought in *separate contempt motions* and during one hearing.

**{¶ 31}** In reaching this decision, we note Father's references to the fact that he has "no control" over the domestic relations court's docket and scheduling office. Therefore, according to Father, he should not be penalized for the magistrate "set[ting] all the matters for [a single hearing] on the same day, presumably as a matter of judicial economy." However, as noted above, Father did not object to the magistrate holding a single hearing to address his nine motions for contempt. Rather, as part of the magistrate's scheduling order, the magistrate specifically stated that "[c]ounsel further agreed that it would be easier to try all the Motions at one time." Because Father agreed that all nine of his motions should be heard at a single hearing, Father invited any error that may have occurred and cannot

---

2. The facts in *Pugh* and *Bowers* are analogous to the facts and circumstances here, i.e., a domestic relations court holding one hearing to address the appellees' two motions for contempt filed against the appellants. The fact that *Pugh* and *Bowers* dealt with only two motions for contempt while this case deals with nine separate motions is a difference without a distinction.

now claim any resulting prejudice therefrom. *See State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 254 (1995) (a party is not "permitted to take advantage of an error which he himself invited or induced the trial court to make").

{¶ 32} We also note Father's references to the generally well-established principle that contempt proceedings must necessarily involve some form of punishment. *See In re J.M.*, 12th Dist. Warren No. CA2008-01-004, 2008-Ohio-6763, ¶ 47 ("punishment is inherent in contempt"). However, although serving as a form of punishment, "[t]he penalties imposed for civil contempt are designed to coerce compliance with a court order for the benefit of the complainant." *Castanias v. Castanias*, 12th Dist. Warren No. CA2009-04-036, 2009-Ohio-6171, ¶ 11. In other words, as the Ohio Supreme Court stated in *Pugh*, sanctions imposed for civil contempt are used "'to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.'" *Id.*, 15 Ohio St.3d at 140, quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497 (1949). A complainant filing successive motions for contempt each alleging a single violation of a shared parenting agreement in hopes that the contemnor would be punished more severely for each violation does not serve this purpose.

{¶ 33} For example, applying Father's argument set forth above, a complainant would be rewarded for filing 14 separate motions for contempt after the contemnor prohibited the complainant from exercising his or her parenting time over a consecutive two-week period. This is because, according to Father's argument, the domestic relations court would be required to find the contemnor in contempt as a "14th offender," thereby subjecting the contemnor to the maximum penalties set forth in R.C. 2705.05(A)(3) for each of the 14 violations: a fine of not more than one thousand dollars, a definite term of imprisonment of not more than 90 days in jail, or both. Or, in this example, a $14,000 fine and a definite term of imprisonment of 1,260 days in jail.

{¶ 34} This, also according to Father's argument, would require the domestic relations court to order the contemnor to reimburse the complainant $2,310 in court costs and pay the complainant $7,000 in attorney fees, i.e., $165 in court costs and $500 in attorney fees for each of the 14 contempt motions upon which the complainant filed and for which the contemnor was sanctioned. This would hold true even though it was likely only the date had changed on 13 of those motions. While Father may disagree, we find such a holding improper in that it would both (1) unduly penalize the contemnor to an extent not contemplated by the General Assembly through the passage of R.C. 2705.05(A)(1) thru (3), and (2) result a windfall to the complainant and the complainant's attorney through an award of attorney fees above and beyond anything that could be considered reasonable. Again, just as the domestic relations court found, "[t]he award of attorney fees is not a sanction but a reimbursement for *actual time expended* as determined reasonable by the court absent formal evidence." (Emphasis added.)

{¶ 35} The domestic relations court also found that "[b]y combining the findings of contempt in one finding of contempt as a second offender serves both the purpose of the proceedings and the purpose of sanctions." We agree. This is because, as noted above, incentivizing a complainant to file separate motions for contempt for each alleged violation was not the Ohio Supreme Court's intention by its holding in *Pugh*, the Tenth District's holding in *Bowers*, or this court's holding in *Mackowiak*. Once more, rather than punishing the contemnor to the harshest extent possible, the purpose of civil contempt is to "coerce compliance with a court order for the benefit of the complainant." *Castanias*, 2009-Ohio-6171 at ¶ 11. This can be achieved without placing an unnecessary burden on the domestic relations court to process nearly identical, repetitive, and duplicitous motions for contempt in hopes that the contemnor would be punished more severely as a higher tiered offender for each alleged violation.

- 16 -

**{¶ 36}** This court's holding is further supported by the discretionary nature of R.C. 2705.05(A). As noted above, that statute specifically provides that if the accused is found guilty of contempt, "the court *may* impose" any of the penalties set forth in R.C. 2705.05(A)(1) thru (3). (Emphasis added.) Therefore, contrary to Father's claim, even if the domestic relations court had designated Mother a higher tiered offender, the domestic relations court was under no obligation to sanction Mother to any harsher punishment than it did. This is because the statute at issue, R.C. 2705.05(A), contains the discretionary term *may* rather than mandatory term *shall*. *See State v. Recinos*, 5th Dist. Richland No. 14CA9, 2014-Ohio-3021, ¶ 34 ("[t]he word 'shall' is usually interpreted to make the provision in which it is contained mandatory" whereas "the use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary"), citing *Dorrian v. Scioto Conservancy District*, 27 Ohio St. 2d 102, 107 (1971).

**{¶ 37}** The penalties that should be imposed upon the contemnor is left to the sound discretion of the domestic relations court, not the complainant. *Mackowiak*, 2011-Ohio-3013 at ¶ 45. The penalties imposed on Mother by the domestic relations court in this case – sentencing Mother to a 60-day jail term that could be purged by Mother providing Father with makeup parenting time and by writing an apology letter to their daughter's soccer facility – was not an abuse of discretion. *See, e.g., Kolenic v. Kolenic*, 11th Dist. Geauga No. 2017-G-0117, 2018-Ohio-1106, ¶ 34 (domestic relations court did not abuse its discretion by imposing a sanction that was statutorily permissible). The penalties instead served as both a punishment for Mother's past indiscretions and a tool to coerce Mother to comply with the parties' shared parenting agreement going forward. Therefore, because we find no abuse of discretion in the domestic relations court's decision, Father's argument challenging the domestic relation court's decision finding Mother was just a "second offender" lacks merit.

<u>Domestic Relations Court's Order of Attorney Fees</u>

{¶ 38} Father also argues the domestic relations court erred by ordering Mother to pay him only $500 in attorney fees. Father instead argues the domestic relations court should have ordered Mother to pay him $2,000, i.e., $500 for each of the four motions for contempt upon which he filed and for which Mother was sanctioned. However, just as the domestic relations court found, Father failed to present any evidence concerning his attorney fees at the contempt hearing. This was the same problem Father faced in *Brown I. Id.*, 2019-Ohio-2164 at ¶ 69. Therefore, because Father failed to present any evidence concerning his attorney fees, Father cannot demonstrate that the domestic relations court abused its discretion by awarding him the presumptively "reasonable" $500 fee set forth in the domestic relations court's Loc.R. DR 45(B).[3] Accordingly, because we find no error in the domestic relations court's decision, Father's argument challenging the domestic relations court's decision ordering Mother to pay him only $500 in attorney fees also lacks merit.

**Conclusion**

{¶ 39} The domestic relations court did not err by finding Mother was a "second offender" despite the domestic relations court finding Mother committed four violations of the parties' shared parenting agreement. Such a holding was proper in light of the Ohio Supreme Court's decision in *Pugh*, the Tenth District's decision in *Bowers*, and this court's holding in *Mackowiak*. The domestic relations court also did not err by ordering Mother to pay Father only $500 in attorney fees. This was because, as noted above, Father failed to present any evidence concerning his attorney fees as required by the domestic relations

---

3. Although not argued by Father as part of his appellate brief, we note that this holding fully complies with the requirements set forth in R.C. 3109.051(K), a statute that requires the domestic relations court to order the contemnor to pay the complainant's "reasonable attorney fees" that "arose in relation to" the contemnor failing to comply with the complainant's parenting time rights.

court's local rules when seeking fees in excess of the presumptively "reasonable" $500 fee. Therefore, finding no merit to any of the arguments raised herein, Father's single assignment of error lacks merit and is overruled.

{¶ 40} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.