OPINION
{¶ 1} Defendant-appellant, Kerry Tener-Tucker, appeals a Warren County Court of Common Pleas decision adopting a magistrate's decision to modify a shared parenting plan between her-self and her former husband, plaintiff-appellee, Michael Tener. We affirm the trial court's decision.
 {¶ 2} Appellant and appellee were granted a divorce on April 9, 2002. The trial court approved a shared parenting plan concerning the custody and parenting of the parties' two minor children, Garrett, then five years old, and Layne, then two years old. Appellant and appellee, both living in Mason, Ohio at the time, were deemed to be the residential parent of the children when the children resided with either based on a two-week schedule. Appellee was designated as the residential parent for school purposes. The decree also specified that "Mother [appellant] will not be free to move the children from Warren County without either the consent of the father [appellee] or an order from the court." Appellee was ordered to pay $764.83 per month in child support and processing fees.
 {¶ 3} In June 2002, appellant married her current husband, Nathan Tucker. Tucker lived with appellant in Mason, but he maintained a house in Farmersville, Ohio located in Montgomery County. The following month, appellant, pregnant with a child from her marriage to Tucker, quit her job due to medical complications surrounding the pregnancy. Appellant gave birth to her third child, Brock Tucker, in October 2002. Because of financial difficulties associated with her unemployment, appellant could not afford rent payments on her Mason residence.
 {¶ 4} Three weeks after Brock's birth, appellant moved with her three children to the house in Farmersville. She did not receive permission from either the court or appellee. Appellee was aware that appellant had moved to Montgomery County, but he believed the move to be only temporary. The Tuckers were reportedly attempting to sell the property in Farmersville in order to purchase a condominium in Mason.
 {¶ 5} In the meantime, Garrett attended school in Mason, requiring a daily two-hour drive from and a two-hour return to Farmersville. Layne, who was still too young for school, made the trip to Mason twice each day. In October 2002, the month Brock was born, Tucker's employment was terminated. He attempted suicide in November 2002 and has since been under treatment for depression.
 {¶ 6} On December 3, 2002, appellant filed a notice of intent to relocate. At the time, Tucker's situation remained unstable, and included an incident where he contacted the Jackson Township police department because he did not want appellant in the house. She left for three days and brought Garrett and Layne to her parents' home in Indianapolis, Indiana.
 {¶ 7} In January 2003, appellee discovered that appellant was no longer attempting to sell the Farmersville house. Appellee moved the trial court to find appellant in contempt of court for violating the court's order that she remain in Warren County. During this time, appellant's water and electricity service was suspended, or were threatened with suspension because bills had not been paid. Also in January 2003, appellant contacted the police because Tucker had been harassing her friend on the telephone.
 {¶ 8} In February 2003, appellant filed a complaint for divorce from Tucker. On February 21, 2003, appellant moved the court to name her the residential parent and sole custodian of the children, or alternatively the residential parent for school purposes.[1] Appellant intended to move to Indiana where her parents and grandparents resided, in part because of the utilities situation at the Farmersville residence. She additionally requested that the court appoint a guardian ad litem to represent the best interest of the children. Appellee objected to appellant's motion and moved on his own to modify the shared parenting plan, specifically noting that appellant had relocated outside of Warren County in violation of the April 9, 2002 decree.
 {¶ 9} In spring 2003, appellant attempted to reconcile with Tucker. A foreclosure action on the Farmersville residence was initiated during that time. In June, Tucker was involved in another domestic violence incident, this time stemming from an episode where he had gotten upset with the children. However, he was not convicted of any crime.
 {¶ 10} In contrast, appellee's living and employment situation remained stable during the period after the parties' divorce. Appellee owns a four-bedroom home in Mason. He has worked at his current job for more than five years. His involvement in Garrett and Layne's lives includes participating in extracurricular activities and sports with his children, and attending school functions like field trips and parent-teacher conferences. Appellee testified that the level of involvement that he desires would be extremely difficult if appellant moves to Indianapolis with the children.
 {¶ 11} The parties stipulated to a change in circumstances prior to their hearing in front of the magistrate. On August 12, 2003, appellant moved to terminate the shared parenting plan. She sought designation as the residential and custodial parent of the two children. Appellant again requested that a guardian ad litem be appointed.
 {¶ 12} The magistrate held a hearing to determine the best interest of the children on September 11, 2003. At that time, appellant's counsel moved to continue the proceedings until a guardian ad litem could interview the parties, and provide the court with a report. Despite appellant's February and August 2003 requests to have a guardian ad litem appointed, no guardian was ever appointed because appellant failed to follow the proper procedures for appointment. The magistrate denied the motion for continuance and proceeded with the hearing.
 {¶ 13} On December 12, 2003, the magistrate issued his decision modifying the parties' shared parenting plan. Appellee was designated the residential parent for school purposes. The children were to reside with him except during appellant's parenting time. The magistrate also ordered appellant to pay child support of $267.75 per month. The magistrate found appellee's motion for contempt to be well-taken and ordered appellant to pay $350.00 toward appellee's attorney fees.
 {¶ 14} On December 26, 2003, appellant filed objections to the magistrate's decision. On April 30, 2004, the trial court judge overruled the objections and adopted the magistrate's decision. Appellant now appeals, raising four assignments of error.
 {¶ 15} Assignment of Error No. 1:
 {¶ 16} "The trial court erred to defendant-appellant's prejudice when it abused its discretion in modifying the shared parenting plan and denying defendant-apellant's [sic] motion to terminate the shared parenting plan instead of designating her sole as [sic] custodian of the children and terminating the shared parenting plan."
 {¶ 17} Appellant argues that the trial court abused its discretion when it modified the shared parenting plan. Specifically, she contends that terminating the shared parenting plan and designating her residential parent and sole custodian would serve the best interest of the children.
 {¶ 18} A trial court has broad discretion to modify a shared parenting agreement, or to terminate it altogether. Dobran v.Dobran, Mahoning App. No. 02 CA 14, 2003-Ohio-1605, at ¶ 14. A trial court's decision regarding the modification or termination of a shared parenting agreement may be reversed only when the trial court abuses that discretion. Donovan v. Donovan (1996),110 Ohio App.3d 615, 618. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 19} Modifications of shared parenting agreements are governed by R.C. 3109.04(E)(2). The court may modify the terms of a shared parenting plan upon its own motion, or upon the request of one or both parents if it determines that the modifications are in the best interest of the children. R.C. 3109.04(E)(2)-(b). In determining the children's best interest and whether shared parenting is in the children's best interest, a trial court is required to consider the factors in R.C. 3109.04(F)(1)-(a)-(j) and R.C. 3109.04(F)(2)(a)-(e) respectively.
 {¶ 20} The court found that appellee's "residence and living arrangements were quite stable," noting that appellee has been in the same residence and at the same job for several years. The court also determined that appellant's residence and living arrangements "fluctuate wildly." The court cited evidence concerning appellant's uncertain relationship with her current husband, including his attempted suicide and his arrests for domestic violence. The court also mentioned appellant's uncertain future plans with respect to relocating to Indiana. Appellant acknowledged appellee is a "good father," and the court found that appellant's decisions "necessarily reduce the amount of time and the quality of time the children spend with [him]."
 {¶ 21} The court's decision to modify the shared parenting plan in the best interest of the children was not arbitrary, unreasonable, or unconscionable. Accordingly, appellant's first assignment of error is overruled.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "The trial court erred to defendant-appellant's prejudice when it abused its discretion and ordered defendant-appellant to pay child support in the amount of $267.75 a month."
 {¶ 24} In appellant's second assignment of error, she alleges that the trial court erred when it refused to deviate from the standard child support schedule. She argues that the court improperly imputed income to her in determining the amount of child support she should contribute because she was unemployed.
 {¶ 25} The Ohio Child Support Guidelines are intended to be used by the courts when determining the appropriate level of child support. Hurdelbrink v. Hurdelbrink (1989),45 Ohio App.3d 5. A court may deviate from these guidelines at its discretion if it determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child. R.C. 3119.22. Absent an abuse of discretion, a trial court's determination regarding child support obligations will not be disturbed on appeal. Pauly v. Pauly,80 Ohio St.3d 386, 390, 1997-Ohio-105.
 {¶ 26} The court utilized appellant's $18,725 annual income from the April 9, 2002 divorce decree for purposes of calculating child support under the modified shared parenting plan, despite the fact that appellant was unemployed at the time of the September 2003 hearing. R.C. 3119.01(C)(5)(b) states that "income" for a parent who is unemployed or underemployed means "the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(11) defines "potential income" as imputed income that the court determines the parent would have earned if fully employed using certain criteria including the parent's prior employment experience, special skills and training, and whether the parent has the ability to earn the imputed income. The court noted appellant voluntarily ceased employment because of her pregnancy and clearly has the skills and prior experience to earn the same amount of income. The court then determined her child support obligation according to the Ohio Child Support Guidelines.
 {¶ 27} We find that the trial court did not abuse its discretion when it imputed $18,275 as appellant's potential income. Furthermore, the court did not act unreasonably, arbitrarily, or unconscionably when it declined to deviate from the child support guidelines. Appellant's second assignment or error is overruled.
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "The trial court erred to defendant-appellant's prejudice when it abused its discretion and found her in contempt and awarded attorney fees to be paid by her."
 {¶ 30} Appellant contends in her third assignment of error that the trial court erred when it found her in contempt for moving from Warren County in contravention of the parties' April 9, 2002 shared parenting plan. Appellant argues that under the language of the decree, she was able to move the children because she had reached a verbal agreement with appellee and obtained permission from him to move from Warren County.
 {¶ 31} "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions."Windham Bank v. Tomaszczyk (1971), 27 Ohio St.2d 55, paragraph one of the syllabus. In order to show contempt, it is necessary to establish a valid court order, knowledge of the order, and a violation of the order. Arthur Young Co. v. Kelly (1990),68 Ohio App.3d 287, 295.
 {¶ 32} On review, an appellate court will not reverse a finding of contempt by a trial court absent a showing of an abuse of discretion. Willis v. Willis, 149 Ohio App.3d 50,2002-Ohio-3716, ¶ 59. Again, appellant must show that the decision of the trial court was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore, 5 Ohio St.3d at 219.
 {¶ 33} The trial court's original decision of February 8, 2002 concerning appellant's desire to move to Montgomery County stated the following:
 {¶ 34} "It seems obvious here that these children should remain in relatively close proximity to their father so that he can be an important part of their life. Mother's desire to move to the north said [sic] of Dayton may well be motivated by her desire to be closer to her new boyfriend than what is truly best for the children and therefore the Court cautions her that she will not be free to move the children from Warren County without either the consent of the father or an Order from this Court."
 {¶ 35} The final decree of April 9, 2002 approving the shared parenting plan included similar language that "[n]either party shall remove a child from the jurisdiction of the Court without prior agreement or consent of the Court; and according to the [February 8, 2002] decision, Mother will not be free to move the children from Warren County without either the consent of the father or an order from this Court."
 {¶ 36} At the hearing before the magistrate, appellant testified that she "knew that [she] was not supposed to move from Warren County." She responded in the affirmative when asked whether she knew that she violated the court agreement. Appellant stated that appellee never consented to the move, only that "he didn't say no." Appellant also said she never received permission from the court to relocate. Despite this lack of consent, appellant moved with the children to Montgomery County in October 2002. To the extent that appellee agreed to the relocation, the court found such consent to be given only for the purposes of a temporary relocation.
 {¶ 37} The trial court did not abuse its discretion when it determined appellant violated the court order and found her in contempt. Furthermore, the award of attorney fees as part of costs taxable to a person found guilty of contempt was also within the trial court's discretion. See State ex rel. FraternalOrder of Police v. Dayton (1977), 49 Ohio St.2d 219, 229;Zmyslo v. Zmyslo (Dec. 2, 1996), Warren App. No. CA96-02-016. Accordingly, appellant's third assignment of error is overruled.
 {¶ 38} Assignment of Error No. 4:
 {¶ 39} "The trial court erred to defendant-appellant's prejudice when it abused its discretion in denying her motion for a continuance to allow the guardian ad litem to complete the task and write a report for protecting the best interests of the children."
 {¶ 40} In appellant's fourth and final assignment of error, she argues that the trial court abused its discretion when it denied her motion for continuance. Appellant maintains the court should have allowed the guardian ad litem to finish her report because neither the parties nor court would suffer any prejudice due to the delay. Appellant argues that the request for a guardian ad litem report served a legitimate purpose in determining the best interest of the children.
 {¶ 41} A trial court has broad discretion when ruling upon a motion for a continuance. State v. Unger (1981),67 Ohio St.2d 65, 67. Thus, a trial court's denial of a motion for a continuance will be reversed on appeal only if the trial court abused its discretion. Id.
 {¶ 42} In ruling upon a motion for a continuance, "[t]he trial court balances the court's interest in controlling its docket and the public's interest in an efficient judicial system with the possibility of prejudice to the defendant." Sayre v.Hoelzle-Sayre (1994), 100 Ohio App.3d 203, 208. The trial court may consider factors such as the length of the delay requested, prior requests for continuances, the legitimacy of the request for a continuance, whether the movant contributed to the circumstances which gave rise to the request for a continuance, inconvenience to the parties, counsel, and the court, and "other relevant factors, depending on the unique facts of each case." Id.
 {¶ 43} In the case at bar, the trial court found that a continuance was not warranted. Because neither party moved for the court to interview any child, the appointment of a guardian ad litem fell within the discretion of court. In fact, when the hearing occurred, the magistrate believed a guardian ad litem had been appointed. However, the record shows that despite appellant's previous motion on February 21, 2003, she did not comply with proper procedure to ensure that a guardian ad litem's report was prepared prior to the proceeding.
 {¶ 44} Appellant's request for continuance was made on the day of the hearing, nearly seven months after her first motion for appointment of a guardian ad litem. Had appellant's motion for continuance been granted, the fact that no guardian ad litem had been appointed would have resulted in an indeterminate delay until an appointment was made, an investigation performed and a report prepared. The trial court did not act unreasonably, arbitrarily, or unconscionably when it overruled appellant's objection to the magistrate's decision. Appellant's fourth assignment of error is overruled.
 {¶ 45} Judgment affirmed.
[1] Appellant withdrew this motion on the basis of her subsequent motion to terminate the shared parenting plan filed on August 12, 2003.