[Cite as *Walton v. Walton*, 2014-Ohio-1122.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

AMY M. WALTON

       Plaintiff-Appellant

v.

BRIAN C. WALTON

       Defendant-Appellee

Appellate Case No.    25936

Trial Court Case No.   2010-DR-25

(Civil Appeal from Common Pleas
 Court - Domestic Relations)

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of March, 2014.

. . . . . . . . . . .

DAVID M. McNAMEE, Atty. Reg. No. 0068582, 42 Woodcroft Trail, Suite D, Beavercreek, Ohio 45430
      Attorney for Plaintiff-Appellant

JAMES R. KIRKLAND, Atty. Reg. No. 0009731, 130 West Second Street, Suite 840, Dayton, Ohio 45402
      Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Amy Walton, appeals from a decision and judgment overruling her motion to establish or increase child support to be paid by Defendant-Appellee, Brian Walton.[1] In support of her appeal, Amy contends that the trial court abused its discretion when it failed to order Brian to pay child support in the amount of $1,498 for the month of August, 2012.

{¶ 2} We conclude that the trial court did not abuse its discretion in refusing to order Brian to pay Amy one-month's child support. Amy failed to provide the trial court with documentation supporting her claim. For the same reason, the judgment was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} Amy and Brian were divorced on March 26, 2010. At the time of the divorce, Amy and Brian filed a final decree of shared parenting, agreeing to equally split the parenting time for their two children, who were then four and five years old. Because of the equal time that each parent would spend with the children, the parties also agreed that neither party would pay child support to the other.

{¶ 4} On December 1, 2011, Amy filed a motion with the trial court, seeking to establish child support for the two minor children, based on the fact that Brian would no longer

---

[1] For purposes of convenience, we will refer to the parties by their first names.

be able to exercise parenting time as he had in the past. Brian then filed a motion on September 9, 2012, asking the court to terminate child support and credit him with a lump-sum payment of $10,846, which he had paid to Amy, pursuant to an alleged agreement of the parties. The lump-sum payment represented child support of $1,498 for seven months, and $749 for the month of December 2011, minus $428.55 in offsets for child-related expenses. Brian indicated that he had been in Iraq, and that the parties had agreed that when he returned, they would resume the status quo in the shared parenting decree.

{¶ 5} When Brian filed the motion, the court had not yet ruled on Amy's motion, and no formal child support order had been established. The magistrate subsequently held a hearing on June 17, 2013, at which time Amy appeared, but Brian did not. Amy testified that Brian left the country for work purposes on December 1, 2011, and returned on August 28, 2012. The parties negotiated about Brian's payment of support for a period of time, but they were not attempting to enter into an agreed order. Amy stated that the lack of an agreed order is the reason that she filed a motion with the court to establish child support.

{¶ 6} Amy further indicated that Brian had paid her child support from December 1, 2011 through July 2012, based on payments of $1,498 per month, with an offset for a piano expense. Because Brian returned on August 28, 2012, and resumed his shared parenting the first week of September 2012, Amy asked the court to award one month's additional support, in the amount of $1,498.

{¶ 7} Amy provided the magistrate with an "intermittent employee agreement" letter dated January 11, 2012. The document lists Brian as the employee, and had an effective date of October 14, 2011. The base rate of pay was described as $79,268.40, and the letter indicated

that potential annual earnings could increase that amount to $196,647. Amy also provided the magistrate with a child support calculation sheet using income figures of $240,000 for Brian, and $79,449 for Amy. No explanation or supporting documentation was provided for these figures, other than the intermittent employee agreement.

{¶ 8} The magistrate issued a decision in November 2012, finding that there was no probative, competent evidence of the parties' income, as required by R.C. 3119.01 et. seq. In addition, the magistrate noted that the parties were now operating under the shared parenting plan and its waiver of child support. Finally, the magistrate noted that Amy had failed to demonstrate why she was entitled to additional support of $1,498. Accordingly, the magistrate found the child support motion to be not well-taken, and dismissed it.

{¶ 9} Amy filed objections and supplemental objections to the magistrate's decision, claiming that the decision was against the manifest weight of the evidence and that the magistrate had abused its discretion. A transcript of the hearing was also filed. On September 16, 2013, the trial court overruled the objections and dismissed the motion to establish child support. Amy now appeals from the judgment overruling her objections.

## II. Did the Trial Court Abuse its Discretion
## in Refusing to Order One Month's Support?

{¶ 10} Amy's sole assignment of error states that:

The Trial Court Erred and Abused Its Discretion When It Failed to Ordered [sic] Appellee be Responsible for Paying Appellant the Sum of $1,498.00 as and for Child Support for the Month of August, 2013.

**{¶ 11}** Under this assignment of error, Amy contends that the trial court abused its discretion and issued a decision that is against the manifest weight of the evidence by failing to order child support for the month of August 2012. Amy argues that Brian had a duty to financially support the children, and that he failed to do so during the month of August 2012.

**{¶ 12}** "A trial court has broad discretion to modify a shared parenting agreement." *Adkins v. Grant*, 12th Dist. Warren No. CA2007-01-001, 2007-Ohio-4115, ¶ 7, citing *Tener v. Tener-Tucker*, 12th Dist. Warren No. CA2004-05-061, 2005-Ohio-3892, ¶ 18. Therefore, we review the court's decision for abuse of discretion. *Id.* An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citation omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). However, "an abuse of discretion most commonly arises from a decision that was unreasonable." (Citations omitted.) *Wilson v. Lee*, 172 Ohio App.3d 791, 2007-Ohio-4542, 876 N.E.2d 1312, ¶ 11 (2d Dist.). "Decisions are unreasonable if they lack a sound reasoning process to support them." *Id.*, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 13}** After reviewing the record, we find no abuse of discretion. Regarding modification of shared parenting agreements, R.C. 3109.04(E)(1)(a) provides that:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting

decree, and that the modification is necessary to serve the best interest of the child.

{¶ 14}    The case before us presents a somewhat unusual situation, because Amy did not seek a change in custody due to Brian's temporary absence; she merely wanted support paid in the interim.    By the time of the support hearing, Brian had returned from his temporary assignment and the parties were proceeding under the original shared parenting agreement, which did not impose a financial support obligation on either party.

{¶ 15}    Furthermore, Amy received a substantial amount of support, and simply wanted Brian to pay one-month's support that he had allegedly failed to pay.   However, Amy failed to provide the court with an appropriate foundation for making an award.   Even if one accepts the figures stated in Brian's "intermittent employee agreement" letter, any amounts listed in that letter differ significantly from the $240,000 figure Amy used in the child support calculation worksheet to justify the $1,498 support amount.

{¶ 16}    R.C. 3109.04(A)(2) provides that "[t]he child support obligations of the parents under a shared parenting order issued under this division shall be determined in accordance with Chapters 3119., 3121., 3123., and 3125. of the Revised Code."   R.C. 3119.01(C)(5) provides that " 'Income' means * * * (a) For a parent who is employed to full capacity, the gross income of the parent * * *."   With respect to calculation of a parent's income, R.C.   3119.05 states that:

> When a court computes the amount of child support required to be paid under a court child support order or a child support enforcement agency computes the amount of child support to be paid pursuant to an administrative child support order, all of the following apply:

(A) The parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns.

{¶ 17}    Both the magistrate and trial court noted in their decisions that the parties failed to provide documentation of their income.    As the moving party, Amy had the burden of providing the court with an adequate basis for making a decision.   Because Amy failed to do so, the trial court did not abuse its discretion by refusing to require Brian to pay an additional month of child support.

{¶ 18}    In her brief, Amy also mentions a manifest weight claim, but does not specifically discuss it.   In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, 524, the Supreme Court of Ohio concluded that the manifest weight standards outlined in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), should apply to civil cases.    *Id.* at ¶ 17.   Thus, "When a [judgment] is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' "   *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *Thompkins* at 387.   "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the [judgment].' "   *Id.*, quoting *State v. Martin*, 20

Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 19} Again, after reviewing the record, we see no basis for concluding that the trial court's judgment was against the manifest weight of the evidence. As was noted, Amy failed to provide the trial court with sufficient documentation to support her claim.

{¶ 20} Accordingly, Amy's sole assignment of error is overruled.

### III. Conclusion

{¶ 21} Amy's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FAIN and DONOVAN, JJ., concur.

Copies mailed to:

David M. McNamee
James R. Kirkland
Hon. Timothy D. Wood