[Cite as *Bowling v. Bowling*, 2021-Ohio-1857.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

KRISTIE BOWLING,                          :

　　Appellee,                              :          CASE NO. CA2020-02-014

                                          :          O P I N I O N
- vs -                                               6/1/2021
                                          :

DARIN BOWLING,                            :

　　Appellant.                            :


APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 11DR35106


Alexander, Wagner & Kinman, Christopher M. Alexander, 423 Reading Road, Mason, Ohio 45040, for appellee

The Lampe Law Office, LLC, Stephen J. Otte, 9277 Centre Pointe Drive, Suite 100, West Chester, Ohio 45069, for appellant


**HENDRICKSON, J.**

{¶1}　Darin Bowling ("Father") appeals from the decision of the Warren County Common Pleas Court, Domestic Relations Division, which resolved multiple post-decree issues between Father and Kristie Bowling ("Mother").　For the reasons discussed below, this court affirms the decision.

{¶2} The parties married in 2004 and twin daughters were born of the marriage in 2006. Mother filed for divorce in 2011 and in 2012, the court issued the parties a final decree of divorce and a shared parenting plan ("SPP"). The SPP provided that both parents were residential parents and would enjoy equal parenting time. With regard to shared expenses related to the daughters, and specifically with regard to extracurricular activities, the SPP provided that the parties would be equally responsible for extracurricular activity expenses so long as the parties agreed to those activities prior to enrollment. The SPP further provided that Father would pay 65% and Mother 35% of the daughters' uninsured medical expenses.

{¶3} In March 2018, Mother moved to modify the SPP. She asked the court to revise the SPP's communication provisions and limit the frequency and length of Father's communications with Mother and the daughters during Mother's parenting time. Mother claimed that Father was extremely controlling and was harassing Mother via telephone calls and text messages by asking for information on what the daughters were doing during her parenting time. Mother argued that if she did not respond quickly enough, or if Father was not satisfied with her response, he would involve the daughters and begin questioning them separately.

{¶4} In turn, Father moved to terminate or modify the SPP. Father raised various concerns about Mother's conduct, including alleging that she would "incessantly contact" the daughters during his parenting time. Father later filed a motion for contempt wherein he claimed that Mother had not paid for her portion of expenses related to the daughters' medical needs, specifically, payments to the daughters' counselor, and sports-related extracurricular activities.

{¶5} In February 2019, the parties appeared before a magistrate for a hearing on the various issues raised. During the hearing, the parties reached an agreement on a

majority of the issues, which they read into the record.

{¶6} Following the hearing, the parties could not agree on a written order memorializing the agreement. Instead, the parties each submitted a proposed agreed order to the magistrate. On May 1, 2019, the magistrate issued a decision that appended and incorporated Father's proposed order, with certain modifications.

{¶7} In relevant part, the agreed order provided that the parties would retain the SPP in its current form. The order further provided that both parents were to "reduce their texting, emailing and telephone contact with the children while the children are in the care of the other parent." The order further specified that the parent not currently engaged in parenting time would be permitted to contact the daughters once in the morning and once again between the hours of 9 and 10 p.m. and would also be free to reply to communication from the daughters, but should keep such responses to a minimum.

{¶8} With respect to disputed expenses, the order provided that Father would submit to Mother his list of claimed expenses for which he sought reimbursement and that if Mother disputed any of those expenses, the parties would submit the issue to the court for resolution.

{¶9} The order specifically did not incorporate, and struck out, a paragraph in Father's proposed order that involved the daughters' ongoing participation in competitive cheer. This stricken provision provided that both parties agreed that the children would continue participating in cheer. The provision further provided that the parties agreed to share the costs of cheer with Father being responsible for 60% and Mother for 40%.

{¶10} On May 18, 2019, Father enrolled the daughters in competitive cheer for the 2019-2020 season. On May 23, 2019, Mother moved the court to "permit minor children to participate in cheerleading at school." In the motion, Mother stated that the daughters had previously participated in competitive cheer but were now entering junior high and wished

- 3 -

to participate in school cheer rather than competitive cheer. Mother also indicated that she could no longer afford the expense of competitive cheer.

{¶11} Approximately one month after the issuance of the agreed order, Father moved for contempt, arguing that Mother had violated the agreed order in multiple respects. Relevant to this appeal, Father argued that Mother had violated the provision to restrict communication with the children during his parenting time. Father alleged that Mother "continually violated" the order by contacting the children outside of the prescribed limited contact times and that she "excessively" texted the children while in Father's care.

{¶12} In June 2019, Mother filed a "notice of inability to pay for expenses." In it, Mother reasserted her financial inability to contribute to the costs associated with the daughters' participation in competitive cheer.

{¶13} The magistrate held an evidentiary hearing in June 2019 in order to resolve those outstanding issues that the parties had not been able to resolve when they went to court in February. These issues included the disputed shared expenses for the daughters. Following the hearing, the magistrate issued a decision on June 17, 2019.

{¶14} With regard to expenses related to the daughters' counselor – who was not within the parties' insurance coverage network – the record reflects that the magistrate found that there was not a "clear understanding" between the parties as to whether to split the counselor costs equally. The magistrate ordered that costs be divided 75% to Father and 25% to Mother for expenses incurred up to February 25, 2019, when the misunderstanding became apparent, and thereafter 65% and to Father and 35% to Mother, in accordance with the SPP's allocation of uninsured medical expenses.

{¶15} With respect to past competitive cheer expenses, the magistrate's decision set forth those cheer-related expenses that Father and Mother had agreed to share and those the parties had not agreed to share. The decision indicated that the magistrate

agreed with an exhibit submitted by Mother at the hearing which indicated that Mother had already paid $2,101.92 of shared expenses claimed by Father.

{¶16} The magistrate also heard evidence on Father's motion for contempt alleging that Mother had violated the agreed order, including the agreed order provision regarding reduction or restriction of communication with the daughters. The magistrate found that Father presented insufficient evidence that Mother was in contempt.

{¶17} Father filed objections to the magistrate's decision. With relevance to this appeal, Father argued that the magistrate erred in calculating Mother's obligation to reimburse him for medical and cheer expenses. Father claimed that the magistrate only considered Mother's spreadsheet exhibit detailing her claims with regard to expenses and did not consider his competing spreadsheet. With regard to his contempt motion, Father cited all the evidence he submitted at the hearing indicating that Mother had violated the communication provisions of the agreed order.

{¶18} In July 2019, Father again moved for contempt. Father argued that Mother continued violating provisions of the agreed order by excessively contacting the children or contacting the children outside of the prescribed hours. Father further argued that Mother had refused to pay her portion of the costs of competitive cheer for May, June, and July 2019.

{¶19} In August 2019, Father moved the court to dismiss Mother's June 2019 "notice of inability to pay for expenses." Father argued that Mother's notice violated a provision in the SPP that required the parties to submit their disputes to private mediation before involving the court.

{¶20} In October 2019, the court issued a decision on Father's objections to the June magistrate's decision. With regard to the counselor expenses, the court overruled Father's objections to the magistrate's allocation of past expenses and ordered Mother to

reimburse Father $1,446.25 of $5,785 paid to the counselor.[1]  With regard to the issue of expenses for competitive cheer, the court noted that there had not been extensive testimony presented.  Accordingly, the court indicated it would hear additional testimony on the subject of cheer expenses at a hearing scheduled for November 2019.  The court additionally noted that it would address Father's pending contempt motions and Mother's two filings with regard to cheer at this November hearing.

{¶21}  In November 2019, shortly before the hearing, Father moved the court to dismiss Mother's May 2019 motion requesting that the daughters participate in school cheer rather than competitive cheer.  Father again argued that Mother's motion violated the SPP's private mediation clause.

{¶22}  The court held hearings over two days in November 2019 to resolve the various outstanding motions and issues.  In January 2020, the court issued its final decision.  The court first rejected Father's argument that Mother's filings with respect to school cheer should be dismissed because she failed to first seek private mediation.  The court noted that Father admitted that he had never sought private mediation before filing any of his previous motions related to the SPP.  The court additionally noted that Father was not amenable to alternative dispute resolution.

{¶23}  With regard to Father's claim that Mother was in contempt for failing to pay cheer expenses for the 2019-2020 season, the court noted that the SPP only required the parties to share in expenses for extracurriculars if they agreed to prior to enrollment.  The court found that Mother had not agreed to pay for competitive cheer for the 2019-2020 season.  The court found, due to the lack of an agreement, Mother would not be responsible for costs associated with competitive cheer after June 17, 2019, because that is when she

---

1. The court requested additional information from the counselor before addressing allocation of expenses for future counseling.

indicated that she would no longer agree to the girls' participation through the "notice of inability to pay."

{¶24} Concerning the allocation of expenses for the prior two seasons of cheer, the court found that Mother had agreed and therefore was obligated to share in the costs for each season. After considering all the evidence relevant to cheer expenses, the court found that the disputed cheer expenses totaled $3,967.39. Consequently, the court ordered Mother to pay Father half that amount, or $1,983.69.

{¶25} The court next addressed Father's various concerns raised via contempt motions. With respect to the argument that Mother was "excessively" communicating with the daughters during Father's parenting time, the court reviewed the communications submitted by Father and found that they were not excessive. However, the court did find Mother in contempt for contacting the children outside of the prescribed hours set forth in the agreed order. The court also found Mother in contempt for not having paid her share of the cheer expenses for the prior two seasons.

{¶26} With respect to sanctions for contempt, the court decided it would only reprimand Mother. In this regard, the court observed that Mother's contempt had not harmed the daughters. Father appeals, raising five assignments of error.

{¶27} Assignment of Error No. 1:

{¶28} THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO STAY APPELLEE'S MAY 23, 2019 AND JUNE 17, 2019 MOTIONS PRIOR TO ATTENDING MEDIATION.

{¶29} Father argues that the court abused its discretion when it failed to dismiss or stay Mother's filings regarding cheer. Father argues that the court should have dismissed or stayed these filings based upon the SPP provision requiring the parties to seek private

mediation before involving the court.[2]

{¶30} An appellate court reviews a domestic relation court's decision involving a shared parenting plan for an abuse of discretion. *See Mack v. Mack*, 12th Dist. Butler No. CA2018-09-179, 2019-Ohio-2379, ¶ 18; *Tener v. Tener-Tucker*, 12th Dist. Warren No. CA2004-05-061, 2005-Ohio-3892, ¶ 18. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Mack* at ¶ 14.

{¶31} The relevant provision from the SPP provided:

**6. Mediation**

In the event that any dispute arises regarding any matter concerning this plan that the parties cannot resolve themselves, they agree to seek private mediation (with an individual counselor, mediation center, or otherwise) prior to seeking Court intervention and to share the cost thereof.

{¶32} The domestic relation court's decision indicates it was primarily based upon Father's waiver of the mediation clause. Upon review, this court does not find that the domestic relations court abused its discretion in finding that Father waived the mediation clause. Father admitted that, despite the parties engaging in a prior round of post-decree litigation beginning in 2015 as well as the current round commencing in 2018, he had never attempted to invoke the clause. During this time, the record indicates that Father filed two motions to terminate shared parenting and five motions for contempt. Father also waited months to file his first motion to dismiss premised on the mediation clause. Finally, Father admitted that he had never arranged for a private mediator.

{¶33} Father nonetheless argues that enforcement of a mediation agreement in a shared parenting plan is equivalent to enforcement of an arbitration clause in a commercial

---

2. The domestic relations court's decision noted that Father had agreed to Mother's request that the daughters participate in school cheer. Consequently, the court found that Mother's motion to participate in school cheer was moot.

agreement, and that this court should review the issue based upon the same legal standard. However, disagreements involving shared parenting plans are not limited to the principles of contract law. In addition, the domestic relations court must also take into consideration the children's best interest in resolving disputes involving these types of plans. A domestic relations court abuses its discretion when it fails to consider the best interest of the child. *See Birch v. Birch*, 11 Ohio St.3d 85, 87-88 (1984).

{¶34} In this regard, the domestic relations court noted that, based upon its familiarity with Father, he was not a person who would be amenable to resolving his differences with Mother through alternative dispute resolution. Thus, the court could have been justified in refusing to enforce the mediation clause based on the conclusion that such efforts would be fruitless and would unnecessarily lengthen the dispute between Father and Mother. The record reflects that the daughters were aware of the extent of conflict between their parents. Any further delay in a resolution of the parties' issues would not be in the daughters' best interest. This court overrules Father's first assignment of error.

{¶35} Assignment of Error No. 2:

{¶36} THE TRIAL COURT'S DETERMINATION THAT APPELLEE DID NOT AGREE TO COMPETITIVE CHEER EXPENSES AND THEREFORE NO LONGER HAS TO CONTRIBUTE TO SAID EXPENSES IS BOTH AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶37} Father contends that the court lost its way in finding that Mother had not agreed to share in the expense of the daughters' participation in competitive cheer. Father contends that the greater weight of the evidence showed that Mother agreed to cheer, albeit tacitly.

{¶38} This court reviews the factual findings of the domestic relations court on a manifest weight of the evidence standard. *See Brown v. Brown*, 12th Dist. Clermont No.

CA2018-08-064, 2019-Ohio-2164, ¶ 30.  In reviewing the manifest weight of the evidence, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.  *Id., citing Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶39}  Father's argument that he was entitled to reimbursement from Mother derives from the following SPP provision:

> Mother and Father shall be equally responsible for the cost of the children's sports related extracurricular activities, including equipment, recreational activities (dance, gymnastics, piano, etc.) as long as the parties agree to the activities prior to enrollment.

{¶40}  Father argues that the first time that Mother informed him that she did not agree to share in the costs of competitive cheer was on May 21, 2019, three days after Father enrolled the daughters.  Prior to enrollment, Father contends that Mother "signaled" an "implicit agreement to continue sharing the costs" of competitive cheer.  He argues that Mother was aware of steps he had taken towards enrolling the daughters.  He also contends that Mother knew that parents must renew a child's commitment to competitive cheer on enrollment day, which was May 18, 2019, and the child must participate in tryouts before enrollment day.  Father points out that Mother was aware that the daughters attended tryouts on May 15 and 16, 2019, and also texted their cheer coach that they would be returning for another year.  Additionally, Father cites the background fact that the daughters enjoyed competitive cheer, which they had been involved in for many years.

{¶41}  Upon review, this court does not find that the domestic relations court lost its way in finding that Mother had not agreed to share in the cost of competitive cheer for the 2019-2020 season.  The SPP only obligated each parent to share in costs of sports-related

extracurricular activities if both parents agreed to that activity prior to enrollment. While Father concentrates on selective facts that he claims led him to believe there was an unstated agreement on competitive cheer, he points to no evidence of any particular affirmative statement or representation by Mother in which she agreed to share the cost of the activity. In fact, Father's testimony at the hearing underscores the fact that he lacked such evidence. In explaining why he believed they had a mutual agreement to share costs, Father testified, "there was never anything given to me [by Mother] saying I don't agree to [competitive cheer]."

{¶42} The agreed order undercuts Father's claim that the parties had a tacit agreement to share cheer expenses or that Father could reasonably believe that such an agreement existed. The magistrate issued the agreed order May 1, 2019, or 17 days before the cheer commitment day. The court used Father's proposed entry as the basis for the agreed order, but specifically struck out the provision in the proposed order that stated that the parties agreed to enroll the children in cheer and share the costs. The magistrate's decision reflected that the agreed order, as modified by the magistrate, precisely reflected the agreement that the parties had reached in court at the prior hearing in February. Father did not move to set aside the agreed order or otherwise challenge this determination. Thus, the record indicates that Father would have been aware, since at least February 2019, and then reminded again on May 1, 2019, that there was a contested issue between the parties about sharing in the costs of the competitive cheer season.

{¶43} Finally, the record contains an email exchange between Father and Mother on the day before, and the day of, enrollment. On May 17, 2019, Father e-mailed Mother, "Commitment day is tomorrow, how do you want to pay your portion?" Mother did not respond until the following morning and instead of answering the question, indicated that

she had contacted her attorney "about this issue" and was waiting for a response.[3] Father's e-mail, revealing that the parties had not yet agreed on sharing costs the day before commitment day, underscores the fact that the parties did not have an agreement in place and that he was aware of the lack of an agreement.

{¶44} The SPP required an agreement prior to enrollment to obligate both parties, not an implicit agreement or the following of custom concerning the daughters' past enrollments. When Father enrolled the daughters in cheer without having first obtained Mother's explicit agreement to share costs, he risked obligating himself to the shoulder the entire costs on his own. Given the history of disputes between the parties, Father could not reasonably rely on an assumption concerning Mother's amenability towards sharing the significant costs associated with this extracurricular activity.[4]

{¶45} Father also argues that the court should have ordered Mother to share in the costs of the 2019-2020 competitive cheer season based upon the doctrine of promissory estoppel. He contends that, because of Mother's actions prior to enrollment, he was induced to believe that she would share the costs. To the extent promissory estoppel has any relevance in a dispute over shared parenting, the doctrine requires evidence of a "clear and unambiguous promise." *Moellering Industries, Inc. v. Nalagatla*, 12th Dist. Warren No. CA2012-10-104, 2013-Ohio-3995, ¶ 15. As explained above, Father presented no evidence of any clear and unambiguous promise by Mother regarding sharing the costs of competitive cheer.

{¶46} Finally, Father argues that it was in the daughters' best interest that both

_____

3. Father testified he received Mother's e-mail after having already enrolled the daughters.

4. Mother argued that the annual cost for the daughters' participation in competitive cheer was approximately $18,000. Father disputed this amount. However, undisputed evidence at the hearing indicated thousands of dollars per year in team dues, which dues did not include the cost for travel expenses for out-of-town tournaments.

parents equally share in the costs of competitive cheer. Father cites this court's case in *Brown*, 2019-Ohio-2164, for the general proposition that extracurricular activities, like cheer, are in the best interest of minor children. Father argues that continued participation in competitive cheer was in the daughters' best interest and that if he was required to pay for cheer on his own, there was a possibility that the daughters might not be able to continue to participate.

{¶47} *Brown* involved a motion to modify a shared parenting plan and the domestic relations court's consideration of various facts relevant to that decision, including the conclusion that one parent was using his opposition to the child's participation in cheer as a litigation strategy in order to acquire more parenting time. *Id.* at ¶ 49. *Brown* is irrelevant to the question here, which is whether Mother, under the terms of the SPP, agreed to share in the cost of competitive cheer. Additionally, Father's argument implies that Mother's indication that she could not pay for cheer would foreclose the daughters' participation. However, Mother never indicated that she was opposed to the daughters' participation in competitive cheer. She just could not afford to support the extracurricular. At the hearing, Mother testified that she would do what she could to support the daughters' participation, such as making sure they had transportation to their events or practices. This court overrules Father's second assignment of error.

{¶48} Assignment of Error No. 3:

{¶49} THE TRIAL COURT'S RECONCILIATION OF PAST EXPENSES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶50} Father argues that the domestic relations court "improperly and inaccurately determined allocation of extracurricular and medical expenses." Father contends that the court, in calculating expenses, relied on a spreadsheet submitted by Mother that contained "inexact figures of expenses" and that the court did not consider his competing spreadsheet

of expenses.

{¶51} The domestic relations court overruled Father's objection to the magistrate's allocation of expenses for the daughters' counselor and found Mother responsible for $1,446.25 for pre-February 25, 2019 expenses. While addressing Father's objections to the portion of the magistrate's decision addressing cheer expenses, the court noted that there had not been "extensive testimony regarding cheer expenses" presented. Accordingly, the court indicated it would hear additional evidence on that subject at the November hearing and admonished the parties that the court "will expect both parents and their attorneys to be fully prepared."

{¶52} At the November hearing, the parties both testified about past cheer expenses. Father testified concerning his Exhibit N, which consisted of various receipts, billing records, and a spreadsheet of expenses. The spreadsheet indicated that Father claimed a total expenditure of approximately $6,200 related to competitive cheer, and thus sought reimbursement for half that amount, or $3,100. Mother testified concerning her Exhibit 55, which was also a spreadsheet. Mother explained that she used Father's Exhibit N spreadsheet and, line by line, added notations indicating that she had already paid for certain claimed expenses, or that Father had duplicated certain expenses. In substance, Mother claimed that she had already paid approximately $2,100 of the $3,100 that Father argued was owed to him.

{¶53} The parties then informed the court that most of the underlying evidence supporting the figures in the two spreadsheets was not available but had been introduced into evidence at the June hearing before the magistrate. The parties discussed this issue and Father ultimately agreed that he did not see the need to introduce additional evidence and that the court could simply consider the exhibits introduced at the June hearing in making its decision as to reimbursement owed by Mother.

- 14 -

{¶54} The domestic relations court's decision reflects that it considered the exhibits submitted by the parties because the court listed each document and claimed expense it reviewed. Based upon this review, the court found that the total of Father's claimed expenses for cheer was $3,967.39. Accordingly, the court ordered Mother to pay half that amount, or $1,983.69.

{¶55} Father's brief fails to identify any specific finding of an expense by domestic relations court that he claims was inaccurate. He also never identifies where the record reflects the proof of expenses for which he claims he should have been reimbursed. Instead, Father vaguely claims that there were inaccuracies in Mother's evidence and contends that the domestic relations court should have given "more thorough consideration" to his argument that Mother's evidence was inaccurate.

{¶56} "The burden of affirmatively demonstrating error on appeal rests with the party asserting error." *Sparks v. Sparks*, 12th Dist. Warren No. CA2010-10-096, 2011-Ohio-5746, ¶ 17. "An appellant must present his or her contentions with respect to each assignment of error and the reasons supporting those contentions, including citations to legal authorities and parts of the record upon which the appellant relies." *Id.* "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." *Spillane v. Spillane*, 12th Dist. Butler No. CA2019-12-206, 2020-Ohio-5052, ¶ 40, citing *Chambers v. Setzer*, 12th Dist. Clermont No. CA2015-10-078, 2016-Ohio-3219, ¶ 7.

{¶57} Father concedes that the evidence submitted to the court by both sides made it "exceptionally difficult, if not impossible, to glean from the evidence and testimony * * * what expenses should have been allocated to the parties." Nonetheless, the domestic relations court's decision reflects careful and thorough consideration of the evidence. The court specifically noted Father's evidence submitted in support of his claims for

reimbursement.  Moreover, despite the court's admonishment, the parties apparently were unprepared to present their case to the domestic relations court regarding cheer expenses. Father agreed that the court should consider the evidence submitted to the magistrate. There is no indication that the court failed to consider Father's evidence.   This court finds no error and overrules Father's third assignment of error.

{¶58}  Assignment of Error No. 4:

{¶59}  IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE FOR THE COURT TO FIND APPELLEE DID NOT EXCESSIVELY COMMUNICATE WITH THE MINOR CHILDREN DURING APPELLANT'S PARENTING TIME AND WAS THEREFORE NOT IN CONTEMPT.

{¶60}  Father contends that the court lost its way in finding that Mother was not "excessively" texting the daughters during his parenting time.  Father states that he submitted a 53-page document detailing Mother's text communications during his parenting time over a months-long period.  With respect to his claim that the communications were "excessive," Father points to his testimony at the hearing in which he claimed that, due to Mother's texting, he "can't do anything with the girls."

{¶61}  In its decision, the domestic relations court reviewed the text messages submitted by Father, quoting from, and describing them at length.  The court found the messages all in the nature of normal parent-child communications.  The court found that none of the messages disparaged Father and none would appear to have intruded upon Father's parenting time.  Accordingly, the court concluded that Father had not demonstrated "excessive" communication in violation of the agreed order.

{¶62}  This court finds that the domestic relations court's conclusions are supported by the weight of the evidence.  The text messages included in Father's exhibit consist of brief, non-controversial communications between Mother and daughters that could not have

conceivably caused a disturbance during Father's parenting time. Certainly, the communications do not support the argument that Father was prevented from doing "anything with the girls."

{¶63} Moreover, in order to sustain a contempt motion, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 35.

{¶64} As noted by the domestic relations court, the agreed order did not specify what would be considered "excessive" communication and did even use that word. The order only admonished the parents to "reduce" their texting, emailing and telephone contact with the children while the children were in the care of the other parent. Thus, the court was justified in declining to find Mother in contempt for lack of clear and convincing evidence of what would constitute "excessive" communications under the agreed order.

{¶65} Finally, although Father presents this issue as a challenge to the weight of the evidence, a finding of contempt is within the sound discretion of the domestic relations court. *Fox v. Fox*, 12th Dist. Butler No. CA2014-02-027, 2015-Ohio-2728, ¶ 9. The court's discussion of its reasoning on this matter does not evidence an attitude that was unreasonable, arbitrary, or unconscionable. This court overrules Father's fourth assignment of error.

{¶66} Assignment of Error No. 5:

{¶67} THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD APPELLANT ATTORNEY FEES AFTER FINDING APPELLEE IN CONTEMPT OF COURT.

{¶68} Father argues that the court abused its discretion in not awarding him attorney fees despite finding that Mother was in contempt of court for her failure to pay for past cheer

expenses and for contacting the children in violation of the agreed order. Father argues that merely admonishing Mother for her violations was an insufficient sanction.

{¶69} "[T]he power to punish for contempt has traditionally been regarded as inherent in the courts * * *." *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 207 (1973). Courts have "wide discretion to determine the punishment for contempt of [their] own orders." *State ex rel. Anderson v. Indus. Comm.*, 9 Ohio St.3d 170, 172 (1984). "A trial court may, within its discretion, include attorney fees as part of the costs taxable to a [party] found guilty of civil contempt." *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 67 (1990), citing *State ex rel. Fraternal Order of Police, v. Dayton*, 49 Ohio St.2d 219 (1977), syllabus. *Accord Tener v. Tener-Tucker*, 12th Dist. Warren No. CA2004-05-061, 2005-Ohio-3892, ¶ 37.[5]

{¶70} Upon review, we do not find that the trial court's decision to admonish Mother, rather than order attorney fees, evidences an attitude that was unreasonable, arbitrary, or unconscionable. This dispute largely arose because of communication issues by both parties. Since the date of the agreed order, Father filed three contempt motions, alleging nine instances of contempt. He only proved contempt in two instances and in both cases the domestic relations court felt that Mother's actions had caused no harm to the daughters. The court's comments during the hearing indicate that the Court believed that Father would file a motion for contempt against Mother anytime he perceived any infraction. In this regard, during the hearing Father threatened that he had a filing ready to allege 14 more

---

5. Father did not cite or otherwise seek a contempt order against Mother under R.C. 3109.051(K), which mandates reasonable attorney fees for contempt of court for failing to comply with "any order or decree granting parenting time rights." *Hart v. Spenceley*, 12th Dist. Butler No. CA2011-08-165, 2013-Ohio-653, ¶ 21. Though there was no evidence that Mother's contempt for failure to share costs for earlier cheer seasons resulted in any loss in Father's parenting time, such contempt could arguably fall within the ambit of R.C. 3109.051(K) because that obligation arose from the SPP. Contempt of the agreed order would seemingly not fall within the statute because the agreed order did not grant parenting time rights. Regardless, Father appears to have moved for contempt under the court's inherent authority.

instances of contempt against Mother. Under these circumstances, we defer to the discretion of the domestic relations court to determine an appropriate sanction and in this case, an admonishment appears reasonable. This court overrules Father's fifth assignment of error.

{¶71} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.